KELLUM, Judge.
Kim Van Pelt appeals the circuit court’s summary dismissal of his petition for post-conviction relief filed pursuant to Rule 32, Ala. R.Crim. P., in which he attacked' his capital-murder conviction and his resulting sentence of death.
In December 2006, Van Pelt was convicted of capital murder pursuant to § 13A-5-40(a)(7), Ala.Code 1975, for murdering his wife, Sandra Marie Ozment Van Pelt, for pecuniary gain and was sentenced to death. This Court affirmed Van Pelt’s conviction and sentence on direct appeal. Vanpelt v. State, 74 So.3d 32 (Ala.Crim. App.2009).[1] The Alabama Supreme Court denied certiorari review and a certificate of judgment issued on May 13, 2011.
Van Pelt timely filed a Rule 32 petition on May 10, 2012, alleging that the State had suppressed evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); that a juror’s untruthful response during voir dire violated his constitutional right to a fair and impartial jury; and that he had been denied effective assistance of counsel during both the guilt phase and the penalty phase of his trial. On July 9, 2012, the State filed an answer and on November 14, 2012, the 'State filed a motion to dismiss Van Pelt’s Rule 32 petition. The State argued that Van Pelt’s Brady claim was precluded by Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P., and was insufficiently pleaded. The State also argued that Van Pelt’s various claims of ineffective assistance of counsel relating to the guilt phase of his trial were insufficiently pleaded and/or without merit, and that Van Pelt’s various claims of ineffective assistance of counsel relating to the penalty phase of his trial were insufficiently pleaded and/or were meritless. The State generally denied Van Pelt’s claim of juror misconduct.
On December 28, 2012, the circuit court entered a lengthy order summarily dismissing Van Pelt’s petition. Van Pelt subsequently filed a postjudgment motion in which he objected to the circuit court’s adoption of a proposed order of dismissal filed by the State. The motion was denied by operation of law. This appeal followed.
In our original opinion affirming Van Pelt’s conviction and death sentence, this *716 Court set out the facts of the crime as follows:
“The State’s evidence tended to show that on November 24, 2004, Jerry Evans discovered the nude body of Sandra Vanpelt on the side of County Road 53 near Hamilton. The medical examiner, Dr. Emily Ward, testified that Sandra died of ‘head injuries and suffocation.’ Dr. Ward further testified that based on the undigested contents of her stomach, Sandra died within two hours of eating a meal that included mushrooms.
“Sandra and Vanpelt met after Sandra responded to Vanpelt’s personal ad on the Internet in the fall of 2004. At that time, Sandra lived in Phenix City and was working at "a Shoney’s restaurant, and Vanpelt lived in Memphis, Tennessee, and was working in construction. After their relationship progressed, Sandra transferred to a Shoney’s restaurant in Muscle Shoals and moved to Tuscum-bia so that she could be closer to Van-pelt. The two married on November 8, 2004, and lived in a mobile home in Tuscumbia.
“On November 2, 2004, Vanpelt contacted an insurance company about obtaining life insurance policies on himself and Sandra. Several of Sandra’s coworkers at Shoney’s restaurant testified that Vanpelt came into the restaurant on November 11, 2004, to have 'Sandra sign a life insurance application. Later that same day, three days after the two were married, Vanpelt submitted the policies and a check for the first month’s premiums to the insurance company. Vanpelt was the beneficiary of the $300,000 proceeds of Sandra’s insurance policy.
“On November 22, 2004, after the two had been married for approximately two weeks, Vanpelt filed a missing person’s report on his wife. He told police that she left to run errands around 9:00 a.m. on the morning of November 22, 2004, and did not return. Sometime later on the same day, Vanpelt went to a local Wal-Mart store and purchased candles, trash bags, a mop, and various cleaners. One cleaner named, ‘Zout oxy,’ stated on the label that it could remove bloodstains.
“Police located Sandra’s Pontiac Grand Am automobile in the parking lot of an abandoned Winn-Dixie grocery store near the Vanpelts’ mobile home on November 23, 2004. Sandra’s clothes were in the trunk, and cigarette butts, which matched the brand Vanpelt smoked, were in the ashtray. Sandra’s body was discovered about 60 feet off a county road where it had been dumped.
“After Sandra’s body was discovered, police searched the Vanpelts’ mobile home. Police testified that the home was spotless. Roger Morrison, the laboratory director of the Huntsville Regional Laboratory for the Alabama Department of Forensic Sciences, testified that using a luminol spray he discovered blood in the master bedroom of the mobile home. Luminol, he testified, would detect very ‘diluted bloodstains.’ The blood matched Sandra’s blood. Police also found a picture of Sandra and the receipt for the cleaning materials in a garbage can inside the mobile home.
“Investigator Marc McCormick of the Alabama Bureau of Investigation testified that Vanpelt gave a statement to police. Vanpelt said that on the evening before his wife’s disappearance, he cooked dinner for her that included sauteed mushrooms. Vanpelt also told police that Sandra was at home Sunday night and that she left the mobile home Monday morning. This statement was inconsistent with the medical examiner’s testimony regarding the time of Sandra’s death.
*717 “Three witnesses testified that Sandra’s white Pontiac automobile was not at the mobile home in the early morning hours of November 22, 2004. One witness, Ray McMahan, also testified that when he drove by the Vanpelts’ mobile home early that morning he saw a black Chevrolet truck backed up to the front door of the mobile home and a rug hanging over the railing. Vanpelt’s vehicle was a black Chevrolet truck.
“Evidence was also presented that while Vanpelt was incarcerated awaiting trial, he wrote to Edward Parson, a fellow inmate at the Colbert County jail, and asked Parson to assist him with a ‘mock’ confession so that he could get out of jail. (C.R. 398.) Vanpelt wrote that he wanted Parson to handwrite the ‘mock’ confession that Parson would compose and then have someone from the outside mail it to police. Id. He .wrote that if the case was dismissed he would file a ‘malicious prosecution’, action against the county. Vanpelt also wrote to Sandra Tucker, an inmate at the Lauderdale County Detention Center, and said that , he believed that her boyfriend was involved in a murder-for-hire plot with his wife and that Sandra had offered Tucker’s boyfriend money to kill Vanpelt.
Patti Lawson, Vanpelt’s former fian-cée, testified that she met Vanpelt in 2000 as a result of a personal ad she posted on the Internet; that her relationship with Vanpelt lasted for four years; that she was at one point engaged to him; and that the engagement ring Vanpelt gave her was the same ring he gave Sandra. Lawson could identify the ring, she said, because she designed its band. Lawson- further stated that around the middle of October 2004, Van-pelt telephoned her and said that he wanted them to get back together. He sent her an airline ticket to Memphis, Tennessee—the ticket was dated October 29—10 days before Vanpelt married Sandra., Lawson said that she did not use the ticket.”
Vanpelt, 74 So.3d at 45-46.

Standard of Review

“[Wjhen the facts are undisputed and an appellate court is presented with pure questions of law, that court’s review in a Rule 32 proceeding is de novo.” Ex parte White, 792 So.2d 1097, 1098 (Ala. 2001). “However, where there are disputed facts in a postconviction proceeding and the circuit court resolves those disputed facts, ‘[t]he standard of review on appeal ... is whether the trial judge abused his discretion when he denied the petition.’ ” Boyd v. State, 913 So.2d 1113, 1122 (Ala. Crim.App.2003) (quoting Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992)).
 “On direct appeal we reviewed the record for plain error; however, the plain-error standard of review does not apply to a Rule 32 proceeding attacking a death sentence.” Ferguson v. State, 13 So.3d 418, 424 (Ala.Crim.App.2008). Additionally, “[i]t is well settled that ‘the procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.’” Nicks v. State, 783 So.2d 895, 901 (Ala. Crim.App.1999) (quoting State v. Tarver, 629 So.2d 14, 19 (Ala.Crim.App.1993)).
Finally, Rule 32.7(d), Ala. R.Crim,- P., authorizes a circuit court to summarily dismiss a Rule 32 petition
“[i]f the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no -material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings .... ”
*718 I.
On appeal, Van Pelt reasserts most of the claims made in his Rule 32 petition.[2] Before addressing the claims in Van Pelt’s Rule 32 petition, we first address preliminary arguments Van Pelt makes on appeal regarding the conduct of the Rule 32 proceedings and procedural errors he claims the circuit court made in summarily dismissing his petition.
A.
Van Pelt first contends that the circuit court violated Martinez v. Ryan, — U.S. -, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), by denying Van Pelt a meaningful opportunity to present his ineffective-assistance-of-counsel claim. Specifically, Van Pelt contends that counsel appointed to represent him in the Rule 32 proceedings did not have a “fair opportunity to meet the specificity requirements of Rule 32” because, he says, counsel did not have the time and resources to adequately respond to the State’s motion to dismiss.
Van Pelt’s argument is without merit. Van Pelt’s reliance on Martinez v. Ryan is misplaced. In Martinez, the United States Supreme Court held that “[w]here,- under state law, claims of ineffective assistance of trial counsel must-be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceedings, there was no counsel or counsel in that proceeding was ineffective.” — U.S. at-, 132 S.Ct. at 1320. In other words, if Rule 32 counsel is ineffective in representing a petitioner in the petitioner’s first Rule 32 proceeding, the petitioner may use that ineffectiveness to avoid procedural default when filing a petition for a writ of habeas corpus in federal court. Thus, Martinez applies only to federal ha-beas corpus petitions; it does not apply to Rule 32 proceedings. Accordingly, Van Pelt is not entitled to relief on this claim.
B.
Van Pelt also contends that the circuit court’s dismissal of his petition violated his due-process rights and “basic principles of fair play” because, he argues, the circuit court denied him “time, materials, and funding necessary to investigate, adequately plead, and develop his Rule 32 petition.” (Van Pelt’s brief, pp. 83-84.) Van Pelt cites Ex parte Fountain, 842 So.2d 726 (Ala.2001), in support of his contention on appeal. In Fountain, the Alabama Supreme Court held that Fountain was denied procedural due process because on appeal from the circuit court’s ruling denying his postconviction petition the State failed to serve him with a copy of the State’s brief as required by Rule 31, Ala. R.App. P. In reaching this conclusion, the Supreme Court stated:
“ ‘[Procedural due process, protected by the Constitutions of the United States and this State, requires notice and an opportunity to be heard when one’s life, liberty, or property interest are about to be affected by governmental action.’ Brown’s Ferry Waste Dis *719 posal Ctr., Inc. v. Trent, 611 So.2d 226, 228 (Ala.1992).
“ ‘Procedural due process, as- guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, § 6, of the Alabama Constitution of 1901, broadly speaking, contemplates the rudimentary requirements of fair play, which include a fair and open hearing before a legally constituted court or other authority, with notice and the opportunity to present evidence and argument, representation by counsel, if desired, and information as to the claims of the opposing party, ivith reasonable opportunity to controvert them.’
“Ex parte Weeks, 611 So.2d [259, 261 (Ala.1992) ] (emphasis added).
[[Image here]]
“... Rule 31, Ala. R.App. P., requiring that each party’s brief or briefs be served on each other party, is formulated to achieve precisely the goal of fundamental fairness that is the essence of due process. An appeal is a debate between the parties to the appeal. That debate is hardly fair if either party presents that party’s arguments ex parte, so that the opponent cannot know what to answer, and if the appellate court considers those ex parte arguments and decides the appeal without affording the opponent a fair opportunity to respond. Rather, each party is due ‘information as to the claims of the opposing party, with reasonable opportunity to controvert them,’ Ex parte Weeks, [611 So.2d 259 (Ala.1992) ], as Rule 31 provides. The requirement for appellate due process in the serving of briefs transcends the merits of the appeal.”
Fountain, 842 So.2d at 729-30.
The situation in this case is not analogous to the situation presented to the Alabama Supreme Court in Fountain. In the instant ease, the record indicates that Van Pelt was served with all of the State’s pleadings and, therefore, had notice of those pleadings. Indeed, the State filed an initial response to Van Pelt’s petition on July 9, 2012, and a motion to dismiss Van' Pelt’s petition on November 9, 2012, both of which were served on Van Pelt. After the State moved to dismiss Van Pelt’s Rule 32 petition, the circuit court granted Van Pelt’s motion to continue the evidentiary hearing in order to allow defense counsel to review the State’s response and prepare for the hearing.[3] The circuit court set the matter for a hearing on January 14, 2013. Therefore, unlike the petitioner in Fountain, Van Pelt was afforded his “due process right to know the State’s arguments in order to formulate [a] reply.” Fountain, 842 So.2d at 730.
Van Pelt argues that his procedural due-process rights were violated because, he says, he was denied funding to hire a mitigation expert and investigator to investigate, adequately plead, and develop his Rule 32 petition. However, this Court has repeatedly held that “‘Rule 32 petitioners are not entitled to funds to hire experts to assist in postconviction litigation, ex parte or otherwise, the trial court did not err in denying the motion. Boyd *720 v. State, 913 So.2d 1113 (Ala.Crim.App. 2003).’ ” Bush v. State, 92 So.3d 121, 167 (Ala.Crim.App.2009) (quoting Johnson v. State, [Ms. CR-05-1805, Sept. 27, 2007] — So.3d-,-(Ala.Crim.App.2007)). Therefore, Van Pelt is not entitled to relief on this claim.
To the extent Van Pelt contends that his due-process rights were violated based on the summary dismissal of his Rule 32 petition without the benefit of discovery, Van Pelt is not entitled to relief. Because we conclude in Part II of this opinion that Van Pelt’s claims were insufficiently pleaded and that summary dismissal was appropriate, Van Pelt did not show “good cause” to be entitled to discovery on those claims. See Ex parte Land, 775 So.2d 847, 853 (Ala.2000) (“[W]e must determine whether [the petitioner] presented the trial court with good cause for ordering the requested discovery. To do that, we must examine [the petitioner’s] basis for the relief requested in his postconviction petition and determine whether his claims are facially meritorious. Only after making that examination and determination can we determine whether [the petitioner] has shown good cause.”), overruled on other grounds, State v. Martin, 69 So.3d 94 (Ala.2011).
C.
Van Pelt next contends that the circuit court erred by denying him the opportunity to respond to evidence submitted by the State before the circuit court summarily dismissed his Rule 32 petition, Specifically, Van Pelt contends that the State presented affidavits that refuted Van Pelt’s claims of ineffective assistance of counsel at the guilt phase and of juror misconduct, and that the circuit court gave him no notice that it intended to take evidence by affidavit in lieu of an evidentiary hearing.
In support of his contention on appeal, Van Pelt relies on this Court’s decision in Yeomans v. State, 195 So.3d 1018 (Ala. Crim.App.2013), for the general proposition that a trial court cannot summarily dismiss a postconviction claim based on an affidavit submitted by the State without first affording the petitioner ah opportunity to respond to the evidence presented in the affidavit.
Assuming, without deciding, that it was error to rely on the affidavits filed by the State without giving Van Pelt an opportunity to respond, such error would not require reversal. The juror-misconduct claim underlying Van Pelt’s challenge to the State’s submission of the affidavit and his lack of opportunity to respond to the affidavit has been abandoned on appeal. See, e.g., Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995) (“We will not review issues not listed and argued in brief.”). Furthermore, Van Pelt’s claim that counsel was ineffective for failing to notify him of a plea offer from the State was insufficiently pleaded as explained in Part II.A. of this opinion. Therefore, the circuit court’s reliance on the affidavit pertaining to that claim was harmless.
D.
Van Pelt also contends that the circuit court violated Alabama law by failing to provide him with sufficient notice of the cancellation of his previously scheduled evidentiary hearing. In support of his contention, Van Pelt relies on this Court’s decision in Presley v. State, 978 So.2d 63 (Ala.Crim.App.2005).
The record reflects that Ván Pelt did not raise this issue in the circuit court, by way of postjudgment motion, or otherwise. Cf. Loggins v. State, 910 So.2d 146, 149 (Ala.Crim.App.2005) (recognizing a motion to reconsider as a valid post-judgment motion in the Rule 32 context). It is well settled that “[t]he general rules of preservation apply to Rule 32 proceed *721 ings.” Boyd v. State, 913 So.2d 1113, 1123 (Ala.Crim.App.2003). See also Slaton v. State, 902 So.2d 102, 107-08 (Ala.Crim. App.2003) (holding the claim that the circuit court erred in adopting State’s proposed order was not preserved for review when it was never presented to the circuit court). Therefore, this issue was not properly preserved for this Court’s review and will not be considered.
E.
Van Pelt further argues that the circuit court erred in adopting the State’s proposed order dismissing his petition. Specifically, Van Pelt contends that by adopting the State’s proposed order, the circuit court “relied only on the State’s factual and legal conclusions” and that the order was nearly identical to numerous adversarial documents filed by the State, including the State’s answer to the Rule 32 petition and the State’s motion to dismiss. (Van Pelt’s brief, p. 91.) Van Pelt cites Ex parte Ingram, 51 So.3d 1119 (Ala.2010), and Ex parte Scott, [Ms. 1091275, March 18, 2011] — So.3d - (Ala.2011), in support of his argument.
Recently, this Court addressed'a similar argument in Mashburn v. State, 148 So.3d 1094 (Ala.Crim.App.2013), in which we stated:
“‘Alabama courts have consistently held that even when a trial court adopts verbatim a party’s proposed order, the findings of fact and conclusions of law are those of the trial court and they may be reversed only if they are clearly erroneous.’ McGahee v. State, 885 So.2d 191, 229-30 (Ala.Crim.App.2003). “While the practice of adopting the state’s proposed findings and conclusions is subject to criticism, the general rule is that even when the court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous.’ Bell v. State, 593 So.2d 123, 126 (Ala.Crim.App. 1991). ‘[T]he general rule is that, where a trial court does in fact adopt the proposed order as' its own, deference is owed to that order in the same measure as any other order of the trial court.’ Ex parte Ingram, 51 So.3d at 1122.
“In Ex parte Ingram, the circuit court adopted verbatim the State’s proposed order summarily dismissing Ingram’s Rule 32 petition. In the order, the court stated that it had considered ‘ “the events within the personal knowledge of the Court” ’ and that it had ‘ “presided over Ingram’s .capital murder trial and personally observed the performance of both lawyers throughout Ingram’s trial and sentencing.” ’ Ex parte Ingram, 51 So.3d at 1123 (citation and emphasis omitted). However, the judge who had summarily dismissed the petition had not, in.fact, presided over Ingram’s trial and had no personal knowledge of the trial. The Alabama Supreme Court described these errors in the court’s adopted order as ‘the most material and obvious of errors,’ 51 So.3d at 1123, and ‘patently erroneous,’ 51 So.3d at 1125, and concluded that the errors ‘undermine[d] any confidence that the trial court’s findings of fact and conclusions of law [we]re the product of the trial judge’s independent judgment.’ 51 So,3d at 1125. The Court also cautioned that ‘appellate courts must be careful to evaluate a claim that a prepared order drafted .by the prevailing party and adopted by the trial court verbatim does not reflect the independent judgment and impartial findings and conclusions of the trial court.’ 51 So.3d at 1124.
[[Image here]]
“In Ex parte Scott, the circuit court adopted verbatim as its order the State’s *722 answer to Scott’s Rule 32 petition. The Alabama Supreme Court stated:
“ ‘[A]n answer, by its very nature, is adversarial and sets forth one party’s position in the litigation. It makes no claim of being an impartial consideration of the facts and law; rather it is a work of advocacy that exhorts one party’s perception of the law as it pertains to the relevant facts.’
“— So.3d at -. The Court then held that ‘[t]he trial court’s verbatim adoption of the State’s answer to Scott’s Rule 32 petition as its order, by its nature, violates this Court’s holding in Ex parte Ingram ’ that the findings and conclusions in a court’s order must be those of the court itself. — So.3d at
“Mashbum argues that his case is similar to Ex parte Scott because, he says, the State’s proposed order adopted by the circuit court tracks the- language of the State’s answer and motion to dismiss and, thus, % filled with language adversarial in nature.’ (Mashburn’s brief, p. 24.) However, Mashburn cites only a single word in the order that he believes is adversarial in nature, and we do not find this single word to be sufficient to indicate that the court’s findings in the order were not the product of its own independent judgment. Likewise, although Mashburn is correct that the State’s proposed order adopted by the circuit court included substantially similar language as the State’s answer and motion to dismiss, the court adopted the State’s proposed order, not the State’s answer, unlike the case in Ex parte Scott, and we do not consider the similar language in the adopted order and the State’s answer to be an indication that the court’s order was not a product of the court’s own independent judgment.
“In sum, the circumstances here are substantially different than the circumstances in both Ex parte Ingram and Ex parte Scott, cases in which it was clear from the record that the orders adopted by the circuit court were not the product of the circuit court’s independent judgment. After thoroughly reviewing the record in this case, we cannot say that the record clearly establishes that the order signed by the circuit court summarily dismissing Mashburn’s petition was not the product of the court’s own independent judgment. Rather, we conclude that the circuit court’s order was its own and was not merely an unexamined adoption of the proposed order submitted by the State. See Ex parte Jenkins, 105 So.3d 1250 (Ala.2012); Jackson v. State, 133 So.3d 420 (Ala. Crim.App.2009) (opinion on return to remand); McWhorter v. State, 142 So.3d 1195 (Ala.Crim.App.2011); and Miller v. State, 99 So.3d 349, 355-59 (Ala.Crim. App.2011).”
Mashburn, 148 So.3d at 1111-13.
In his brief on appeal, Van Pelt contends that the circuit court’s adopted order “represents the adversarial nature of the State in the way Mr. Van Pelt’s claims are described, calling one claim related to child abuse suffered by Mr. Van Pelt a ‘mundane fact[ ],’ ” and “echoes the adversarial tone of the State’s pleadings even in appearance, emphasizing the test to argue that Mr. Van Pelt did not provide sufficient support for various claims in his petition.” (Van Pelt’s brief, pp. 94-95.) Van Pelt also cites numerous typographical errors in the circuit court’s proposed order that are also found in the State’s answer and motion to dismiss.
As in Mashburn, supra, it is not clear from the record in this case, as it was in Ex parte Ingram and Ex parte Scott, that the order adopted by the circuit court was *723 not the product of the circuit court’s independent judgment. The “adversarial tone” of the adopted order and the typographical errors contained in it do not, in and of themselves, establish that the circuit court’s order dismissing Van Pelt’s petition was not the product of the court’s own independent judgment. Therefore, Van Pelt is not entitled to relief on this claim.
II.
Van Pelt also contends that the circuit court erred in summarily dismissing his claims of ineffective assistance of trial counsel. As a result, Van Pelt contends, the circuit court erroneously placed on him a burden of proof at the pleading stage of the proceedings. According to Van Pelt, all of his claims were sufficiently pleaded and entitled him to an evidentiary hearing. We disagree.
“[A]t the pleading stage of Rule 32 proceedings, a Rule 32 petitioner does not have the burden of proving his claims by a preponderance of the evidence. Rather, at the pleading stage, a petitioner must provide only ‘a clear and specific statement of the grounds upon which relief is sought.’ Rule 32.6(b), Ala. R.Crim. P. Once a petitioner has met his burden of pleading so as to avoid summary disposition pursuant to Rule 32.7(d), Ala. R.Crim. P., he is then entitled to an opportunity to present evidence in order to satisfy his burden of proof.”
Ford v. State, 831 So.2d 641, 644 (Ala. Crim.App.2001).
In Boyd v. State, 913 So.2d 1113 (Ala. Crim.App.2003), this Court explained the pleading requirements and the propriety of summary disposition as follows:
“Rule 32.3, Ala. R.Crim. P., provides, in pertinent part, that ‘[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.’ See, e.g., Fortenberry v. State, 659 So.2d 194, 197 (Ala. Crim.App.1994). Pursuant to Rule 32.6(b), Ala. R.Crim. P.:
“‘The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.’
“See, e.g., Wilson v. State, 650 So.2d 587, 590 (Ala.Crim.App.1994).
“As this court has previously noted:
“ ‘ “An evidentiary hearing on a [Rule 32] petition is required only if the petition is ‘meritorious on its
face.’ Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is ‘meritorious on its face’ only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright, supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986).”
‘“Moore v. State, 502 So.2d 819, 820 (Ala.1986).’
“Bracknell v. State, 883 So.2d 724, 727-28 (Ala.Crim.App.2003).
“ ‘Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.’ Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion ‘which, if true, entitle[s] the *724 petitioner to relief.’ Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App. 1993). It is the allegation of facts in pleading which, if true, entitles a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving those alleged facts.
“Thus, a Rule 32 petitioner is not automatically entitled to an evidentiary hearing on any and all claims raised in the petition. To the contrary, Rule 32.7(d), Ala. R.Crim. P., provides for the summary disposition of a Rule 32 petition
‘“[i]f the court determines that the petition is not sufficiently specific [in violation of Rule 32.6(b) ], or is precluded [under Rule 32.2, Ala. R.Crim. P.], or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by further proceedings .... ’
“ ‘ “Where a simple reading of the petition for post-conviction relief shows that, assuming every allegation of the petition to be .true, it is obviously without merit or is precluded, the circuit court [may] summarily dismiss that petition.’” Tatum v. State, 607 So.2d 383, 384 (Ala.Crim.App.1992), quoting Bishop v. State, 608 So.2d 345, 347-48 (Ala. 1992), quoting in turn Bishop v. State, 592 So.2d 664, 667 (Ala.Crim.App.1991)(Bowen, J., dissenting); see also Rule 32.7(d), Ala. R.Crim. P.”
913 So.2d at 1125-26 (footnote omitted).
In Hyde v. State, 950 So.2d 344 (Ala. Crim.App.2006), this Court further explained:
“The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petitiqn to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003). To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694, 104 S.Ct. 2052. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
950 So.2d at 356.
After thoroughly reviewing the circuit court’s order, we conclude that the court did not confuse the burden of pleading with the burden of proof. Instead, the circuit court properly applied the well recognized and heavy burden of pleading as set forth above. In its 45-page order, the circuit court made specific written findings regarding the pleading deficiencies in Van Pelt’s ineffective-assistance-of-counsel claims. For the reasons set forth below, we agree with the circuit court that summary dismissal of Van Pelt’s petition with *725 out an evidentiary hearing was appropriate under Rule 32.7(d), Ala. R.Crim. P.
Before addressing each of Van Pelt’s ineffective-assistance-of-eounsel claims, we note the following well settled principles of law.
“[W]hen reviewing a petitioner’s claims of ineffective assistance of counsel, we apply the standard articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner must establish: (1) that counsel’s performance was deficient; and (2) that the petitioner was prejudiced by counsel’s deficient performance.
“ ‘First, the defendant must show that counsel’s performance was deficient, This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.’
“Strickland, 466 U.S. at 687.
“ ‘To meet the first prong of the test, the petitioner must show that his counsel’s representation fell below an objective standard of reasonableness. The performance inquiry must be whether counsel’s assistance was reasonable, considering all the circumstances.’ Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987). ‘“This court must avoid using ‘hindsight’ to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel’s actions before determining whether counsel rendered ineffective assistance.” ’ Lawhorn v. State, 756 So.2d 971, 979 (Ala.Crim.App.1999) (quoting Hallford v. State, 629 So.2d 6, 9 (Ala.Crim.App.1992)). ‘A court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.’ Strickland, 466 U.S. at 689.
“‘Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to- conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-34, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range óf reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” See Michel v. Louisiana, [350 U.S. 91], at 101 [ (1955) ]. There are countless ways to provide effective assistance in, any given case. . Even the best criminal defense .attorneys would not defend a particular client in the same way.’
*726 “Strickland, 466 U.S. at 689.
“‘[T]he purpose of ineffectiveness review is not to grade counsel’s performance. See Strickland [v. Washington], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [(1984)]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir.1992) (“We are not interested in grading lawyers’ performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.”). We recognize that “Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.” Strickland, 104 S.Ct. at 2067. Different lawyers have different gifts; this - fact, as well as differing circumstances from case to case, means the range of what might be. a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or “what is prudent or appropriate, but only what is constitutionally compelled.” Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987).’
“Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir.2000) (footnotes omitted).
“To establish the second prong of the test, ‘[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ Strickland, 466 U.S. at 694. ‘A reasonable probability is a probability sufficient to undermine confidence in the outcome.’ Id. ‘It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proeeéding.’ Id. at 693. “When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer—in-cluding an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.’ Id. at 695.”
Bryant v. State, 181 So.3d 1087, 1106 (Ala. Crim.App.2011).
Bearing in mind these principles as well as the burden of pleading as set forth above, we turn to Van Pelt’s claims.

Guilt-Phas& Ineffective-Assistance Claims

. On appeal, Van Pelt contends that his trial counsel were ineffective during the guilt-innocence phase of his capital-murder trial because they (1) failed to adequately communicate with him in the two years leading up to trial; (2) failed to adequately investigate the capital-murder charge; and (3) failed to submit the State’s case to adversarial testing.
A.
Van Pelt first contends that his trial counsel did not adequately communicate with him during the two years he remained incarcerated after his arrest and before his trial. In his petition, Van Pelt alleged:
“Trial counsel did not adequately interview Mr. Van Pelt. Trial counsel did not discuss adequately with Mr. Van Pelt the following topics: Mr. Van Pelt’s work history; educational background; relationship with Sandra Van Pelt; living situation in the preceding weeks; and his mental state. Counsel’s failure to adequately interview Mr. Van Pelt prevented counsel from learning information about Mr. and Mrs. Van Pelt’s *727 relationship beyond what the State presented at trial. Also, counsel’s failure to adequately interview Mr. Van Pelt about his work and educational history left counsel with almost no information about Mr. Van Pelt’s finances and ability to earn money.
“Trial counsel did not' adequately discuss with Mr. Van Pelt the circumstances surrounding the crime. Counsel’s failure to adequately speak with Mr. Van Pelt about the crime limited the scope of investigation that trial counsel could have conducted. Thus, trial counsel forfeited their ability to develop and provide an alternate theory of the' case at trial on Mr. Van Pelt’s behalf.
“Trial counsel failed to communicate adequately with Mr. Van Pelt' concerning the plea offer they were presented by the State. Counsel did not adequately discuss the possibility of a plea negotiation with Mr. Van Pelt, and only mentioned the offer on'the day that voir dire took place. Trial counsel told Mr. Van Pelt that he had been offered a plea, but that they had turned it down. Trial counsel had not discussed previously with Mr. Van Pelt whether he would consider a plea offer. Therefore, trial counsel made an unauthorized decision when they rejected the State’s plea offer. In March of 2012, the United States Supreme Court held that such a failure constitutes ineffective assistance of counsel under the Sixth Amendment. See Missouri v. Frye, No. 10-444 (U.S. Mar. 21, 2012), Lafler v. Cooper, No. 10-209 (U.S. Mar. 21, 2012). In Missouri v. Frye, the United States Supreme Court expressly held that ‘defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.’ No. 10-444, slip op. at 9 (U.S. Mar. 21,2012). Trial counsel’s failure to communicate a plea offer to Mr. Van Pelt denied Mr. Van Pelt the opportunity to avoid a death sentence. Mr. Van Pelt would not have been sentenced to death had counsel communicated the State’s plea offer to him.”
(C. 17-18.)
This claim was not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b), Ala. R.Crim. P. Regarding Van Pelt’s claim: that trial counsel failed to adequately interview him and to discuss the circumstances surrounding the crime with him, Van Pelt fails to state what information counsel would have been learned and how the information would have aided his defense. Van Pelt alleges only generally that counsel failed to discuss certain topics with him but gives no indication in his pleading what he expected counsel to learn relating to those topics and how that information would have been beneficial for his defense at trial. Likewise, Van Pelt’s claim that trial counsel failed to communicate with him regarding a plea offer by the State fails to state a claim because Van Pelt does not allege that he would have accepted the offer. Indeed, in Missouri v. Frye, — U.S.-, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012), a case relied on by Van Pelt in his petition, the petitioner alleged that he would have entered a guilty plea had he known about the plea offer. Because Van Pelt failed to adequately plead his ground for relief, summary dismissal of this claim of ineffective assistance of counsel was proper.
B.
Van Pelt next contends that his trial counsel did not adequately investigate the capital-murder charge against him before trial. In his petition, Van Pelt alleged:
*728 “Trial counsel never requested funds for an investigator and never acquired the assistance of anyone experienced in criminal investigation to assist in preparation for trial. This failure prevented counsel from adequately challenging the State’s case. ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, 31 Hofstra L.Rev. 913, 925 (‘Counsel must promptly obtain the investigative resources necessary to prepare for both phases, including at minimum the assistance of a professional investigator’).
“Trial counsel failed to interview witnesses for the State and to obtain the information necessary for effective cross-examination. Consequently, trial counsel could not effectively undermine the credibility or reliability of the State’s theory of the crime. Ex parte Womack, 541 So.2d 47 (Ala., 1988) (counsel in capital case found ineffective for failing to investigate evidence that would have impeached State witnesses). Counsel’s responsibility to do this was particularly crucial because counsel failed to call any witnesses or present any evidence as a defense. For example, trial counsel’s failure to interview Patti Lawson, Mr. Van Pelt’s ex-fiancé [sic], prevented trial counsel from conducting substantive cross-examination of Ms. Lawson.
“Defense counsel failed to hire expert witnesses to rebut expert testimony presented by the State. Trial counsel never requested funds for the acquisition of an expert witness during the guilt-innocence phase of the trial. For example, trial counsel did not hire a canine search expert to demonstrate the unreliability of the State’s evidence regarding the canine search. Trial counsel did not hire a medical expert to highlight the inconsistencies in the medical testimony concerning the time and cause of death.
“Counsel did not adequately review discovery documents, and was not prepared to- effectively cross-examine witnesses based upon the information contained therein. This lack of preparation was evidenced by counsel’s .motion for mistrial based on an assertion that the State had elicited testimony about a tire track report that had not been disclosed. Defense counsel had, in fact, received the report in question. (R. 476-480.)
“Counsel did not interview Mr. Van Pelt’s family or friends in preparation for trial. The jurors did not hear the wealth of evidence available from family members and friends. The jurors were left to believe that because Mr. Van Pelt’s relatives and friends were not willing to testify or attend trial on his behalf, Mr. Van Pelt must be guilty and deserving of death.
“Trial counsel did not follow other leads or conduct a thorough investigation. Counsel failed to conduct reasonable inquiries in order to prepare.their defense. This is exemplified by the statement made by Mr. Adridge at trial that it was not his burden ‘to go out and hunt up public information’ in preparation for trial. (R. 479.)”
(C. 19-20.)[4]
In its order, the circuit court addressed these claims as follows:
*729 “In paragraph 30, Van Pelt claims •that trial counsel were ineffective for failing to retain an investigator. This claim is dismissed for the following reason:
“This paragraph fails to set forth sufficient facts to establish that trial counsel rendered ineffective assistance. Van Pelt fails to allege sufficient facts to show what arguments trial counsel could have made in support of a motion for investigative assistance. Further, Van Pelt fails to identify any investigator that was available to assist trial counsel, fails to allege what role that investigator would have played in the investigation, fails to specifically allege what the investigator would have discovered, and fails to explain how the investigator’s assistance would have produced a different result in his trial.... Windsor [v. State, 89 So.3d 805 (Ala.Crim.App.2009) ]; see also Thomas [v. State, 766 So.2d 860, 892 (Ala.Crim.App.1998) ]; see also Smith [v. State, 71 So.3d 12 (Ala.Crim. App.2008) ]. As such, this claim is insufficiently pleaded and is dismissed. Ala. R.Crim. P., 32.3, 32.6(b), 32.7(d).
“In paragraph 31, Van Pelt claims that trial counsel were ineffective for failing to interview the State’s witnesses. This claim is dismissed for the following reason:
“This paragraph fails to set forth sufficient facts to establish that trial counsel rendered ineffective assistance. Van Pelt fails to identify any witnesses that trial counsel did not interview, fails to allege what counsel could have but did not discover, fails to allege how his cross-examination would have been ‘more effective’ had he interviewed them, and fails to allege how interviewing witnesses would have changed the result of his trial..., As such, this claim is insufficiently pleaded and is summarily dismissed. Ala. R.Crim. P., 32.3, 32.6(b), 32.7(d).
“Iri paragraph 32, Van Pelt claims that trial counsel were ineffective for failing to retain canine search and medical experts. This claim is dismissed for the following reason:
“This paragraph fails to set forth sufficient facts to establish that trial counsel rendered ineffective assistance. Van Pelt fails to , allege sufficient facts to show what arguments trial counsel could have made in support of a motion for expert assistance. Further, Van Pelt fails to identify any experts that were available to assist trial counsel, fails to allege what the experts would have testified to, and fails to explain how the expert’s assistance would have produced a different result in his trial..., As such, this claim is insufficiently pleaded and is summarily dismissed. Ala. R.Crim. P„ 32.3; 32.6(b), 32.7(d).
“In paragraph 33, Van Pelt claims that trial counsel were ineffective for failing to review discovery documents. This claim is dismissed for the following reason:
' “This paragraph fails to set forth sufficient facts to- establish that trial counsel rendered ineffective assistance. Van Pelt fails to identify any documents that trial counsel did not adequately review, fails to allege what counsel could have but did not discover, fails to allege how his cross-examination would have been ‘more effective’ had he conducted additional review, and fails to allege how additional review would have changed the result of his trial — As such, this claim is insufficiently pleaded and is summarily dismissed. Ala. R.Crim. P., 32.3,32.6(b), 32.7(d).
“In paragraph 34, Van Pelt claims that trial counsel was ineffective for fail *730 ing to interview his family. This claim is dismissed for the following reason:
“This paragraph fails to set forth sufficient facts to establish that trial counsel rendered ineffective assistance. Van Pelt fails to identify any witnesses that trial counsel did not interview, fails to allege what counsel could have but did not discover, fails to show that the interviews would have led to the introduction of admissible evidence, and fails to allege how interviewing witnesses would have changed the result of his trial.... As such, this claim is insufficiently pleaded and is summarily dismissed. Ala. R.Crim. P., 32.3, 32.6(b), 32.7(d).
“In paragraph 35, Van Pelt claims that trial counsel were ineffective for failing to ‘follow other leads’ and failing to conduct ‘reasonable inquiries.’ This claim is due to be dismissed for the following reason:
“This paragraph fails to set forth sufficient facts to establish that trial counsel rendered ineffective assistance. Van Pelt fails to identify any ‘other leads’ that trial counsel did not follow or ‘inquiries’ that trial counsel did not make, fails to plead facts to show what evidence trial counsel could have but did not discover, fails to show that the evidence would have been admissible, and fails to show how following leads or making inquiries would have changed the result of his trial.... As such, this claim is insufficiently pleaded and is summarily dismissed. Ala. R.Crim. P., 32.3, 32.6(b), 32.7(d).”
(C. 9-15.) We agree with the circuit court.
Van Pelt failed to plead sufficient facts in support of his claims to satisfy the requirements in Rule 32.3 and Rule 32.6(b). “[CJlaims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result.” Thomas v. State, 766 So.2d 860, 892 (Ala.Crim. App.1998). Furthermore, we have held that a petitioner fails to meet the specificity requirements of Rule 32.6(b) when the petitioner fails to identify an expert by name or to plead the contents of that expert’s expected testimony. See, e.g., Yeomans v. State, 195 So.3d 1018, 1043 (Ala.Crim.App.2013) (holding postconviction claim that trial counsel was ineffective for not procuring expert testimony to be insufficiently pleaded where petitioner “did not identify, by name, any expert who could have presented that specific testimony”); and Scott v. State, [Ms. CR-06-2233, March 26, 2010] — So.3d -, - (Ala.Crim.App.2010)(holding postconviction claim that trial counsel was ineffective for not adequately investigating and presenting certain evidence to be insufficiently pleaded where petitioner did “not identify any witnesses who could testify to the facts he claims would have benefitted him”), rev’d on other grounds, [Ms. 1091275, March 18, 2011] — So.3d(Ala.2011). Van Pelt’s claims challenging his trial counsel’s failure to investigate consisted of bare allegations in which he made general claims regarding the inadequacies of his trial counsel in preparation for trial.
For these reasons, Van Pelt failed to plead sufficient facts to indicate that his counsel were ineffective for not adequately investigating the capital-murder charge against him before trial. Therefore, summary dismissal of Van Pelt’s ineffective-assistance-of-counsel claim challenging counsel’s failure to investigate was proper.
C.
Van Pelt also contends that his trial counsel did not adequately challenge the State’s case against him. Van Pelt raises *731 six claims alleging counsel’s deficient performance in this regard; we address each in turn.
1.
First, Van Pelt contends that trial counsel failed to communicate to the jury that the case against Van Pelt was based on circumstantial evidence. In his petition, Van Pelt asserted:
“Trial counsel failed to communicate to the jury that the State presented only circumstantial evidence against Mr. Van Pelt. Trial counsel should have informed the jury and judge that there was no physical evidence linking Mr. Van Pelt to the scene where Sandra Van Pelt’s body was found. No DNA, fingerprints, or other identifying objects that could have led police to her killer were recovered from that location. (R. 426.) No one witnessed Sandra Van Pelt’s murder or the disposal of her body, and no one ever confessed to killing her.- Trial counsel’s failure to adequately present this information to the jury prejudiced Mr. Van Pelt.”
(C. 21.)
This claim is not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). In his petition, Van Pelt did not identify any specific arguments that trial counsel should have “communicated” to the jury. Van Pelt also failed to allege how emphasizing the circumstantial nature of the evidence presented by the State would have changed the outcome at trial. Because Van Pelt’s circumstantial-evidence claim is nothing more than a bare allegation of error on the part of trial counsel, the circuit court did not err in summarily dismissing this claim as insufficiently pleaded.
2.
Next, Van Pelt challenges trial counsel’s failure to object to hearsay evidence. In his petition, Van Pelt asserted:
“Trial counsel failed to object to testimony by State’s witnesses that clearly constituted hearsay evidence. Counsel did not object when testimony was elicited during witnesses’ testimony, and also permitted the State to rely upon the evidence in his closing argument without objection. The trial court allowed the State to introduce two statements made by Sandra Van Pelt’s co-workers; both statements should have been objected to by counsel and excluded by the Court. First, Linda Aday testified that after Mr. Van Pelt met Sandra at her work to sign life insurance applications, Linda told Sandra, You had better watch your back, he is going to do something.’ (R. 726.) Second, Terry Pate testified that after Mrs. Van Pelt signed the applications he remarked, ‘Girl, he is going to kill you.’ (R. 753.) These statements constituted both hearsay and bad character evidence; they were irrelevant to any material issue at trial. Moreover, the inflammatory nature of the statements made them highly prejudicial. Trial counsel should have objected strenuously to their admission.”
(C. 21-22.)
This claim was not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). Van Pelt failed to allege facts to show that grounds for a hearsay objection existed. Rather, Van Pelt offered bare and conclusory allegations that the testimony was objectionable. Although Van Pelt alleged that the testimony was objectionable as hearsay, he did not plead that the testimony was offered for the truth of the matter asserted.
Moreover, even if the claim had been sufficiently pleaded, summary dismissal was appropriate because Van Pelt’s claim was without merit. On direct appeal from Van Pelt’s conviction, this Court addressed *732 whether the testimony of Linda Aday and Terry Pate—Mrs. Van Pelt's eoworkers— was, in fact, hearsay. See Vanpelt v. State, 74 So;3d 32 (AIa.Crim.App.2009). In concluding that the testimony was not hearsay, this Court stated:
“ ‘Hearsay’ is defined as ‘a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.’ Rule 801(c), Ala. R. Evid. Clearly, the remarks made by Sandra’s coworkers were not offered to prove the truth of the matter asserted. Each witness/declarant testified that the statements were made to Sandra in jest—as a joke. It is difficult to have a hearsay violation when the declarant does not believe that the admitted statement is true. Because the statements were not offered to prove the truth of the matter asserted, no hearsay violation occurred.”
74 So.3d at 59. Because the testimony elicited at trial was not hearsay, trial counsel was not ineffective for failing to object to the testimony on that basis. See Hall v. State, 979 So.2d 125, 150 (Ala.Crim.App. 2007) (holding trial counsel’s performance was not deficient based on alleged failure to make a meritless objection). Accordingly, the circuit court’s summary dismissal of this claim was proper.
3.
Van Pelt also alleges that his trial counsel failed to object to unqualified and unreliable expert testimony during trial. In his petition, Van Pelt alleged: '
“Trial counsel failed to object to the State’s impermissible admission of unqualified and unreliable expert testimony regarding the results of a canine search. Counsel did not object when testimony was elicited during witness’s testimony, and also permitted the State to rely upon this evidence in closing argument without objection. Specifically, the trial court allowed the State to present testimony by Edward Nicholas regarding the results of the dog search, without qualifying Mr. Nicholas as an expert or establishing that the results of the dog search were sufficiently reliable to be considered by the jury. The State did not present any information regarding Mr. Nicholas’ training and experience in the field of canine cadaver searches to qualify him as an expert; Mr. Nicholas merely testified that he had been a volunteer for the Huntsville Emergency Medical Services, Inc. (HEMSI). (R. 759.) Moreover, Mr. Nicholas’ testimony was unreliable because he did not have any' first-hand knowledge of the dog searches in this case. He was not the dogs’ handler and he could not explain how these particular dogs might ‘alert’ to the scent of human remains. Mr. Nicholas’ testimony was highly prejudicial because the State used this testimony to connect Mrs. Van Pelt’s car to the crime; use of Mrs. Van Pelt’s car was a crucial component of the State’s theory. Trial counsel should have objected to the State’s failure to qualify Mr. Nicholas as an expert and the admission of his testimony.”
(C. 22.)
This claim does not meet the pleading and specificity requirements of Rule 32.3 and Rule 32.6(b). This Court has held:
“ ‘An evidentiary hearing on a [Rule 32] petition is required only if the petition is “meritorious on its face.” Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is “meritorious on its face” only if it contains á clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature *733 and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright, supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986).’ ”
Bracknell v. State, 883 So.2d 724, 727-28 (Ala.Crim.App.2003) (quoting Moore v. State, 502 So.2d 819, 820 (Ala.1986)). Van Pelt failed to allege facts to show that grounds for an objection on the part of trial counsel existed and why the evidence in this case was inadmissible.
Moreover, for the reasons stated in our direct appeal, the dog-tracking evidence was properly admitted at trial. On direct appeal from Van Pelt’s conviction, this Court held that the dog-tracking evidence was admissible under Alabama law and that the evidence was properly admitted in Van Pelt’s case. Vanpelt, 74 So.3d at 63. This Court stated:
“In Alabama, ‘[t]he admissibility of dog-tracking evidence upon a proper predicate has been recognized ... for over a century. See Burks v. State, 240 Ala. 587, 200 So. 418 (1941); Orr v. State, 236 Ala. 462, 183 So. 445 (1938); Loper v. State, 205 Ala. 216, 87 So. 92 (1920); Gallant v. State, 167 Ala. 60, 52 So. 739 (1910); Hargrove v. State, 147 Ala. 97, 41 So. 972 (1906); Richardson v. State, 145 Ala. 46, 41 So. 82 (1906); Little v. State, 145 Ala. 662, 39 So. 674 (1905); Hodge v. State, 98 Ala. 10, 13 So. 385 (1893); Holcombe v. State, 437 So.2d 663 (Ala.Crim.App.1983); Moore v. State, 26 Ala.App. 607, 164 So. 761 (1935); and Allen v. State, 8 Ala.App. 228, 62 So. 971 (1913).’ Gavin v. State, 891 So.2d 907, 971 (Ala.Crim.App.2003). In Gavin, this court established the proper predicate for the admission of dog-tracking evidence. Id. Specifically, this court held that dog-tracking evidence is admissible if the State establishes ‘the training and reliability of the dog, the qualifications of the person handling the dog, and the circumstances surrounding the tracking by the dog.’ Gavin, 891 So.2d at 971. See also State v. Montgomery, 968 So.2d 543, 550 n. 6 (Ala.Crim.App.2006) (reiterating the three foundational requirements for the admission of dog-tracking evidence); State v. Neeley, 143 Ohio App.3d 606, 630-31, 758 N.E.2d 745, 764 (2001) (holding that the State may establish the predicate for dog-tracking evidence by showing ‘the training and reliability of the dog, the qualifications of the person handling the dog, and the circumstances surrounding the trailing by the dog....’); McDuffie v. State, 482 N.W.2d 234, 237 (Minn.Ct.App.1992) (same requirements); Rule 702, Ala. R. Evid. (‘A witness qualified as an expert by knowledge, skill, experience, training, or education, may testify ... in the form of an opinion or otherwise.’). This court further explained that ‘[t]he foundational evidence need not be overwhelming or specific, but must be sufficient to indicate reliability of the evidence.’ Gavin, 891 So.2d at 971 (citing Burks v. State, 240 Ala. 587, 200 So. 418, 419 (1941)). See also Montgomery, 968 So.2d at 550 n. 6 (same).
“Nicholas testified; that he has been coordinating dog searches with the group for 15 years and has done a great deal of study regarding dog searches. (R. 759, 773.) Nicholas explained that he is familiar with the dogs that performed the search in this case and that he helped train those dogs. (R. 760, 766.) Nicholas described in detail the process used to train the dogs and the specialized training the dogs, received. He further stated that all four dogs were certified and ‘considered mission ready in both live and cadaver.’ (R. 761-64.) Nicholas then detailed the circumstances surrounding the search of *734 the two vehicles and the mobile home. (R. 765-69.)
“Based on the foregoing, ■ the State established a proper foundation for the admission of the dog-tracking evidence and presented sufficient evidence to indicate that the evidence was rehable. Gavin, 891 So,2d at 971.”
Vanpelt, 74 So.3d at 63-64.[5] Because the dog-tracking evidence was properly admitted at trial and the evidence was deemed reliable, trial counsel was not ineffective for failing to object to the State’s alleged admission of unqualified and unreliable expert testimony regarding that evidence. See, e.g., Lee v. State, 44 So.3d 1145, 1173 (Ala. Crim.App.2009)(counsel cannot be ineffective for failing to raise a claim that has no merit). Accordingly, the circuit court’s summary dismissal of this claim was proper.
4.
Van Pelt also contends that his trial counsel failed to object to the admission of what he says was unreliable and highly prejudicial DNA evidence. In his petition, Van Pelt alleged:
“Trial counsel failed to object to the State’s impermissible admission of unreliable and highly prejudicial DNA matching evidence. State’s counsel did not present DNA evidence that met the requirements under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), thereby violating Ala.Code [1975,] § 36-18-30 (2012). In order for DNA evidence to be admissible, the State must sufficiently establish that: (1) the theory and technique on which the DNA evidence is based is reliable; and (2) the theory and technique on which the proffered DNA evidence is based is relevant to understanding the evidence or determining a fact issue. Ex parte State (In re Dwight Turner), 746 So.2d, 355, 361 (Ala.1998). The State’s expert, Robert Bass, testified that the DNA profiles derived from several bloodstains in the Van Pelt’s [sic] home ‘matched’ that of Sandra Van Pelt. (R. 816.) Mr. Bass further testified that Mr. Van Pelt’s DNA profile and Mrs. Van Pelt’s DNA profiles matched the major component of carpet samples containing a mixture of DNA profiles. (R. 823, 824.) According to Mr. Bass, one sample contained the DNA profile for an unknown male individual. (R. 824.) *735 Mr. Bass provided no information to the jury about what ‘principles and methodology’ were used to perform the DNA matching task. Turner, 746 So.2d at 359. Furthermore, although Mr. Bass testified to the ‘statistical significance’ of these matches, the State failed to present any evidence with respect to the reliability of the population frequency statistics used. This evidence was highly prejudicial because the State utilized it as the concrete link between Mr. Van Pelt and Mrs. Van Pelt’s death. Trial counsel should have objected to the admission of unsupported and unreliable evidence.”
(C. 22-23.)
This claim was not sufficiently pleaded. Van Pelt failed to allege that it was impossible for the State to present evidence to satisfy the admissibility requirements for DNA evidence had trial counsel objected. Specifically, Van Pelt failed to allege that the State’s DNA expert could not have testified regarding the “principles and methodology” used to perform DNA matching. Therefore, Van Pelt failed to specifically allege how he was prejudiced as a result of trial counsel’s failure to object to the DNA evidence at trial. Because this claim failed to satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b), summaiy dismissal was proper under Rule 32.7(d).
5.
Next, Van Pelt contends, as he did in his Rule 32 petition, that his trial counsel failed to present a cohesive theory of the case during closing arguments. In his petition, Van Pelt alleged:
“Counsel failed to present any cohesive defense theory of the case during closing argument. Trial counsel’s closing argument was unclear and did not present any coherent rebuttal to the case presented by the State. The closing argument did not attempt to raise doubt in the jurors’ minds regarding the evidence presented by the State. During closing argument, trial counsel failed to address inconsistencies in the State’s evidence.”
(C. 23-24.)
Van Pelt failed to meet his burden of pleading in regard to this claim. Other than his general assertions that counsel’s closing argument was deficient because counsel failed to present a “cohesive defense theory,” “did not attempt to raise doubt,” and “failed to address inconsistencies in the State’s evidence,” Van Pelt fails to allege with any specificity what counsel should have argued and how those particular arguments would have changed the-result of his trial. Further, Van Pelt does not identify what “inconsistencies” his trial counsel failed to address. Because this claim failed to satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b), summary dismissal was proper under Rule 32.7(d).
6.
Van Pelt also contends, as he did in his Rule 32 petition, that trial counsel failed to rebut the capital element of the charged offense. Van Pelt asserted:
“Trial counsel failed to rebut.the capital element of the charged offense. Though trial counsel objected to the admission of evidence regarding conditional insurance coverage, he did not present rebuttal evidence regarding Mr. Van Pelt’s alleged monetary motive. Trial counsel failed to speak with relatives and friends regarding Mr. Van Pelt’s financial situation and lifestyle in the months leading up to his arrest. Counsel failed to investigate Mr. Van Pelt’s personal finances. Counsel did not investigate or present any evidence rebutting the assertion that Mr. Van Pelt *736 acted out of financial desperation or greed.”
(C. 24.)
This claim is not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). Van Pelt failed to identify what evidence could have been discovered and presented had his trial counsel spoken to relatives and friends regarding Van Pelt’s finances and lifestyle following the death of Mrs. Van Pelt. Indeed, Van Pelt did not allege any facts about his finances. Further, Van Pelt failed to identify any witnesses trial counsel failed to interview or allege what counsel could have, but did not, discover or how the admission of this evidence would have changed the result of trial. Accordingly, the circuit court’s summary dismissal of this claim was proper.
D.
Finally, Van Pelt contends that he specifically pleaded that he suffered prejudice during the guilt phase of trial based on his trial counsel’s ineffective assistance. In his petition, Van Pelt alleged:
“Individually and cumulatively, trial counsel’s failures at the guilt-innocence phase rendered them ineffective. Trial counsel did not subject the State’s case to meaningful adversarial testing. Trial counsel did not- adequately communicate with Mr. Van Pelt, investigate Mr. Van Pelts’ [sic] case, effectively cross-examine witnesses, object to highly prejudicial and inadmissible evidence, or present a theory of defense. Trial counsel’s errors were so serious as to undermine confidence in the outcome of Mr. Van Pelt’s trial. Strickland v. Washington, 466 U.S. 668, 694 (1984). Trial counsel’s failure to adequately communicate with Mr. Van Pelt and conduct an adequate investigation prevented him from making reasonable strategic decisions and challenging the State’s case against Mr. Van Pelt. Mr. Van Pelt was prejudiced by trial counsel’s failures. There is a reasonable probability that Mr. Van Pelt would not have been convicted had trial counsel performed a reasonably adequate investigation and provided effective assistance at trial.” ‘
(C. 24-25.)
This claim was not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). Van Pelt made only bare and conelusory allegations of prejudice without providing a factual basis or any explanation as to how the alleged errors by counsel prejudiced him. “A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.” Rule 32.6(b), Ala. R.Crim. P. Therefore, the circuit court’s summary dismissal of this claim was proper.

Penalty-Phase Ineffective-Assistance Claims

E.
Van Pelt contends that his trial counsel were ineffective for failing to investigate and to present mitigation evidence at the penalty phase of his capital-murder trial.
With regard to counsel’s duty to investigate, this Court has explained:
“ ‘While counsel has a duty to investigate in an attempt to locate evidence favorable to the defendant, “this duty only requires a reasonable investigation.” Singleton v. Thigpen, 847 F.2d 668, 669 (11th Cir.(Ala.) 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 822, 102 L.Ed.2d 812 (1989) (emphasis added). See Strickland, 466 U.S. at 691, 104 S.Ct. at 2066; Morrison v. State, 551 So.2d 435 (Ala.Cr.App.1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990). Counsel’s obli *737 gation is to conduct a “substantial investigation into each of the plausible lines of defense.” Strickland, 466 U.S. at 681, 104 S.Ct, at 2061 (emphasis added). “A substantial investigation is just what the term implies; it does not demand that counsel discover every shred of evidence but that a reasonable inquiry into all plausible defenses be made.” Id., 466 U.S. at 686, 104 S.Ct. at 2063.’
“Jones v. State, 753 So.2d 1174, 1191. (Ala. Cinm.App.1999).
“ ‘[Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the. circumstances, applying a heavy measure of deference to counsel’s judgments.’
“Strickland v. Washington, 466 U.S. 668, 690-91.(1984).
“ ‘The reasonableness of the investigation involves “not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.” ’ St. Aubin v. Quarterman, 470 F.3d 1096, 1101 (5th Cir.2006) (quoting Wiggins v. Smith, 639 U.S. 610, 527, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). ‘[Bjefore we can assess the reasonableness of counsel’s investigatory efforts, we must first determine the nature and extent of the investigation that took place.’ Lewis v. Horn, 581 F.3d 92, 115 (3d Cir.2009). Thus, ‘[a]l-though [the] claim is that his trial counsel should have done something more, we [must] first look at what the lawyer did in fact.’ Chandler v. United States, 218 F.3d 1305, 1320 (11th Cir.2000).”
Broadnax v. State, 130 So.3d 1232, 1247-48 (Ala.Crim.App.2013).
“ ‘A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered' the outcome of the trial.’ ” Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir.1993) (quoting United States v. Green, 882 F.2d 999, 1003 (5th Cir.1989)). “[C]laims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result.” Thomas v. State, 766 So.2d 860, 892 (Ala.Crim.App. 1998) (citing Nelson, supra), aff'd, 766 So.2d 860 (Ala.2000), overruled on other grounds by Ex parte Taylor, 10 So.3d 1075 (Ala.2005).
Van Pelt raises several different grounds in support of his claim that trial counsel failed to adequately investigate mitigating evidence; we address each in turn.[6]
1.
Van Pelt contends that trial counsel was ineffective for failing to adequately *738 interview him about his background. In his petition, Van Pelt alleged:
“Trial counsel did not adequately interview Mr. Van Pelt as a component of the mitigation investigation. Trial counsel did not interview Mr. Van Pelt about his childhood; relationships with his parents, grandparents and siblings; childhood exposure to abuse, violence, domestic violence, and drugs; educational, medical, and employment history; and relationship with his adolescent children.”
(C. 26.)
This claim was not insufficiently pleaded. Van Pelt failed to allege what specific information counsel would have discovered had he “adequately interviewed” Van Pelt and failed to plead facts to show that this information would have been admissible and ultimately changed the result of his trial. Because this claim failed to satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b), summary dismissal was proper under Rule 32.7(d), Ala. R.Crim. P.
2.
Van Pelt also contends that trial counsel were ineffective for failing to investigate the extensive history of domestic violence within Van Pelt’s family. In his petition, Van Pelt alleged:
“Counsel failed to investigate Mr. Van Pelt’s family history of violence that permeates multiple generations. Trial counsel did not speak with five of Mr. Van Pelt’s siblings regarding their family’s domestic violence history. Counsel never learned that both of Mr. Van Pelt’s parents were raised in abusive and violent households. Counsel failed to ask about the context of generational violence in brief conversations with Brian and Dale Van Pelt prior to trial.
[[Image here]]
“Counsel should have presented testimony that Mr. Van Pelt’s parents, Thomas Jefferson Van Pelt and Hazel Louise Van Pelt, were born into physically abusive and emotionally destructive families. Neither Thomas Van Pelt nor Hazel Louise Van Pelt was given any support to help them deal with the prominent level of violence present in their homes. Mr. Van Pelt and his siblings were aware of the violence their parents had experienced as children.
“The judge and jury should have known that Thomas Van Pelt’s mother was cold, neglectful, and severely abusive to him. She tied Thomas Van Pelt to a tree in the yard when she wanted to leave the home.
“Thomas Van Pelt’s mother exhibited extreme violence toward her husbands. Thomas Van Pelt’s mother shot one of her husbands during a fight. She stabbed another of her husbands. She did not serve jail time for these acts of violence.
“Counsel should have presented evidence that Mr. Van Pelt’s mother, Hazel Louise Van Pelt, was raised in a family that was dominated by domestic violence. She witnessed her mother suffer extreme abuse at the hands of her father.
“Hazel Louise Van Pelt’s traumatizing childhood caused her to develop a warped view of relationships. When Hazel Louise Van Pelt left her parents, she entered into her own dysfunctional and abusive relationship with her first husband. Hazel Louise Van Pelt’s brother also exhibited lasting scars from their violent childhood. Her brother followed in their father’s footsteps, becoming a physically abusive husband.
“The judge and jury should have known that both of Mr. Van Pelt’s parents were left deeply damaged by their *739 violent childhoods. His parents were unable to appreciate the levels of physical and emotional abuse to which they subjected their own children.”
(C. 26-27; 35-36.)
This claim is not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b) because, among other deficiencies, Van Pelt failed to identify witnesses whose testimony could have been, but was not, presented at trial regarding Van Pelt’s parents’ violent childhoods, and Van Pelt failed to allege any facts at all to indicate that he was prejudiced by the failure to elicit this testimony at trial. Therefore, summary dismissal of this claim of ineffective assistance of counsel was proper.
3.
Van Pelt also contends that trial counsel were ineffective for failing to investigate the unstable and transient environment Van Pelt experienced as a young child. Van Pelt alleged:
“Trial counsel did not adequately investigate the unstable, transient life that Mr. Van Pelt experienced as a young child. Counsel did not discover that the family moved frequently between Florida and Maryland when Mr. Van Pelt was small. Counsel did not adequately investigate Mr. Van Pelt’s three foster placements. Counsel neither acquired records of these placements, nor interviewed Mr. Van Pelt’s siblings about their experiences in foster care. Trial counsel failed to interview Mr. Van Pelt about the time he spent with foster families.

tl

“Trial counsel failed to present testimony that when Mr. Van Pelt was very young, his family moved frequently. Mr. Van Pelt’s father was employed in the construction industry and moved frequently to find work. Mr. Van Pelt’s father was frequently in trouble with the law and moved to avoid his legal troubles. Van Pelt’s family frequently moved around the Maryland-Washington D.C. area, and spent several winters in Florida. Mr. Van Pelt and his' siblings would withdraw from school in Maryland when winter came and would re-enroll in school when they returned from Florida.
“The judge and jury should have known that Mr. Van Pelt was about five years old when his father was sent to prison. Mr. Van Pelt’s mother could not afford to take care of him, his four brothers, one half brother, and two sisters. Mr. Van Pelt’s mother placed him and all his siblings but one into the foster care system. Counsel should have presented testimony that Mr. Van Pelt’s mother maintained custody of Mr. Van Pelt’s older brother Dale because Dale was having kidney problems. ’ Mr. Van Pelt’s mother did not explain why she decided to keep Dale to her other children. Mr. Van Pelt and his siblings were forced to separate from their mother. They did not understand why Dale was able to remain behind.
“Mr. Van Pelt and his siblings were split up when they entered the foster care system. Mr. Van Pelt was placed with his brother Brian, and he and Brian lost contact with their other siblings and their mother throughout , their years in foster care.
“Counsel failed to present testimony that while in foster care, Mr. Van Pelt and his brother Brian were placed in three different homes over two years. Mr. Van Pelt was in kindergarten and first grade during this time.
“The judge and jury should have known that Mr. Van Pelt and Brian were first placed at the home of an elderly couple. Mr. Van Pelt and Brian *740 Van Pelt only stayed with the couple for a short period of time. The couple had Mr, Van Pelt and Brian transferred to another foster home because the boys accidentally broke a piece of furniture while playing inside the house.
“Counsel should have presented testimony that Mr. Van Pelt and Brian’s second foster placement was also short-lived, lasting less than one summer. The second foster family had an older son. This older son liked guns and scared Mr. Van Pelt and Brian by taking them hunting.
' “Mr. Van Pelt and Brian’s third foster home was a farm with seven or eight other foster children. The parents at this foster home used Mr. Van Pelt and the other foster children as farm labor. Mr. Van Pelt's brother, Brian, received a feerious injury, while they were working to harvest hay for the family. Mr. Van Pelt witnessed Brian fall off a hay wagon and injure his leg badly.1 Mr. Van Pelt and his brother spent the majority of their time" in foster care at this farm.
“The jury should have known that Mr. Van Pelt and his siblings were not reunited with their family until Mr. Van Pelt was about seven years old.”
(C. 27; 36-38.)
This claim is not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). Van Pelt failed to identify witnesses who would have testified at trial about his unstable and transient environment as a child and failed to identify what testimony could have been offered by each witness in this regard. Van Pelt also failed to explain how further investigation would have changed the result of his trial. . Accordingly, the circuit court’s summary dismissal of this claim was proper.
4.
Van Pelt next contends that trial counsel was ineffective for failing to adequately investigate the physical and emotional abuse of Van Pelt and his siblings. In his petition, Van Pelt asserted:
“Counsel failed to adequately investigate the vast, abuse that the Van Pelt children suffered at the hands of their father. Mr: Van Pelt himself, in addition to all of his siblings, would have elaborated extensively upon the extent, degree and frequency of the child abuse to ■ which they were subjected. Trial counsel permitted an incomplete and inaccurate description of Mr. Van Pelt’s life to be presented at trial.
[[Image here]]
“Counsel should have presented testimony that Mr. Van Pelt’s father physically and emotionally abused Mr. Van Pelt and his siblings on a daily basis, creating a home environment plagued by constant fear for his children. The only reprieve Mr. Van Pelt and.his siblings had from their father occurred when their father passed out after drinking. Mr. Van Pelt and his siblings remained alert when their father, passed out. Mr. Van Pelt’s father sometimes woke the children in the middle of the night in a violent rage.
“The judge and jury should have learned that Mr. Van Pelt’s father slapped and punched Mr. Van Pelt and his siblings regularly. At times then-father used a stirrup or belt to beat his children. Sometimes Mr. Van Pelt’s father would beat his children with objects he found nearby, such as lamps, utensils, and beer cans. Mr. Van Pelt’s father even shot guns inside the house to scare his children.
“Trial counsel should have presented evidence that Mr. Van Pelt almost lost his finger as a result of his father’s *741 abuse. Mr. Van Pelt’s father threw a machete at Mr, Van Pelt’s hand. The blade nearly sliced off Mr. Van Pelt’s finger.
“On at least one occasion, Mr. Van Pelt’s father beat Brian Van Pelt, one of Mr. Van Pelt’s older brothers, so hard that blood flowed from his ears. On another occasion, Mr. Van Pelt’s father attempted to drown Brian in a river behind the family’s house. Mr. Van Pelt and his siblings watched their father throw Brian off of a pier. Mr. Van Pelt and his siblings would have testified that witnessing this incident deeply scarred them.
“Though counsel presented testimony by Brian Van Pelt that their father sexually abused him, the jury should have known that the sexual abuse was carried out with household objects, and that the sexual abuse began when Brian was about fourteen years old. Brian Van Pelt would have testified that the sexual abuse by his father was his ultimate motivation for leaving home at the age of sixteen.
“Trial counsel should have presented testimony by Mr. Van Pelt’s siblings that Mr. Van Pelt and his older brothers bore the brunt of their father’s abuse. During their father’s violent episodes the younger siblings would hide.
“The violence at home led Dale Van Pelt and Brian Van Pelt to leave home to join the military. Brian Van Pelt did not wait until he was eighteen to leave home. Brian Van Pelt obtained his mother’s signature and joined the military when he was sixteen years old.
“The judge and jury should have known that the situation at home worsened after Dale Van Pelt and Brian Van Pelt left home for the military. After their brothers left there were fewer children living at home to bear the brunt of their father’s anger. Mr. Van Pelt and his other siblings incurred a greater quantity of abuse than they had previously experienced.
“Counsel failed to present evidence that Sherry LaMantia, Mr. Van Pelt’s younger sister, ran away after her older brothers left for the military. Ms. La-Mantia ran away with a 30-year-old man when she was only 13 years old. She spent her adolescent years camping in a state park in Florida to avoid returning to the abusive home in which she was raised in Maryland.
“The judge and jury should have learned that the abuse that Mr. Van Pelt suffered at the hands of his father was so pervasive that he deluded himself into believing his father showed love by abusing him.”
(C. 27; 38-40.)
This claim is not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). Although Van Pelt set forth an extensive factual narrative in his petition, he failed to identify witnesses who would have testified, but did not, at trial about the physical and emotional abuse of Van Pelt and his siblings. Van Pelt also failed to identify what testimony could have been offered by each witness in this regard. Van Pelt also failed to explain how further investigation would have changed the result of his trial.
Moreover, evidence of physical and emotional abuse sustained by Van Pelt and his siblings during childhood was presented to the jury. Both Brian Van Pelt and Dale Van Pelt testified regarding Van Pelt’s father’s abusive nature. In its order addressing this claim, the circuit court acknowledged this testimony, finding, in pertinent part:
“The vast majority of facts alleged in Van Pelt’s petition were testified to by *742 either Brian or Dale.... Contrary to Van Pelt’s claims, trial counsel did not fail to present these facts' to the jury. For instance, Van Pelt claims that the jury did not know that Brian Van Pelt was subjected to ‘sexual abuse .., with household objects.’ (Petition, ¶ 96). However, Brian Van Pelt testified that he was sexually assaulted with shovel handles. (R. 1030).”
(C. 726.)
“ ‘ “[T]he failure to present additional mitigating evidence that is merely cumulative of that already presented does not rise to the level of a constitutional violation.” Nields v. Bradshaw, 482 F.3d 442, 464 (6th.Cir.2007)(quoting Broom v. Mitchell, 441 F.3d 392, 410 (6th Cir. 2006)).’ Eley v. Bagley, 604 F.3d 968, 968 (6th Cir.2010). ‘This Court has previously refused to allow the omission of cumulative testimony to amount to ineffective assistance- of counsel.’ United States v. Harris, 408 F.3d 186, 191 (5th Cir .2006).”
Daniel v. State, 86 So.3d 405, 429-30 (Ala. Crim.App.2011).
For these reasons, summary dismissal of this claim of ineffective assistance of counsel was proper.
5.
Van Pelt next contends that his trial counsel were ineffective for failing to investigate the physical, sexual and emotional abuse of Van Pelt’s mother by his father. In his petition, Van Pelt alleged:
“Trial counsel did not investigate the extent 'to which Mr. Van Pelt witnessed severe physical and psychological abuse of his mother by his father. Mr. Van Pelt, all of his siblings, and other relatives, would have told counsel that Mr. Van Pelt’s father was widely known to subject his wife to extreme abuse. Counsel failed to learn that Mr. Van Pelt witnessed a great deal of this abuse first-hand,' and trial counsel took no steps to determine what effect this had on Mr. Van Pelt’s formative years.
[[Image here]]
“Trial counsel should have presented testimony of the degree to which Mr. Van Pelt’s father subjected his mother to unrelenting levels of abuse. Mr. Van Pelt and his siblings often witnessed this abuse.
“The judge and jury should have known that Mr. Van Pelt’s father beat his mother regularly. These beatings left visible bruises and scars on Mr. Van Pelt’s mother’s face. The injuries were visible to her children and to others outside the family.
“Mr. Van Pelt’s father sometimes beat Mr. Van Pelt’s mother so badly that she would bleed profusely around the house. At times, Mr. Van Pelt’s father would strip his wife’s clothing off as he beat her in front of Mr. Van Pelt and his siblings.
“Trial counsel should have presented testimony that Mr. Van Pelt and his siblings observed their father regularly insult and humiliate their mother. Mr. Van Pelt’s father would become upset with the food Mr. Van Pelt’s mother served him. Mr. Van Pelt’s father regularly told her that her food was unfit for a dog. Mr. Van Pelt’s father threw the food across the table at Mr. Van Pelt’s mother or upended the dinner table. After Mr. Van Pelt’s father threw food or overturned the table .he would force the children to clean up the mess.
“The jury and judge should have learned that Mr. Van Pelt’s father publicly abused and humiliated Mr. Van Pelt’s mother. Mr. Van Pelt’s father once stripped her of all of her clothing and then locked her out of the house. Mr. Van Pelt and his siblings had to let *743 their naked mother back into the home. On one occasion, Mr. Van Pelt’s father dragged Mr. Van Pelt’s mother across their yard with a chain wrapped around her body.
“Trial counsel should have presented evidence that Mr. Van Pelt’s father subjected Mr. Van Pelt’s mother to sexual abuse. He regularly raped her. Mr. Van Pelt and his siblings believed their father was a sexual maniac.
“Mr. Van Pelt’s sister, Sheny LaMan-tia, would have testified that their mother believed Sherry saved her life once as a child. Ms. LaMantia knocked on her parents’ bedroom door while her father violently beat and raped her mother. Mr. Van Pelt’s father only stopped when a young Sherry walked into the room and begged him to quit. All of the children witnessed violent sexual assaults by their father.
“Trial counsel should have presented testimony that Mr. Van Pelt’s father physically and emotionally controlled his wife by impregnating her year after year. He told her regularly that she could not leave him because she was unable to care for the children. Mr. Van Pelt’s mother once attempted to leave her husband. Mr. Van Pelt’s father brought the children to the place 'where she was staying and had them beg her to come back. Mr. Van Pelt’s father used him and his siblings to maintain control over Mr. Van Pelt’s mother.
“Mr. Van Pelt’s siblings would have testified that Mr. Van Pelt’s father continued to abuse his wife while she was pregnant. Mr. Van Pelt’s father beat her and told her that she produced worthless children. Mr. Van Pelt’s mother lost multiple children after her husband abused her during pregnancy. Mr. Van Pelt[’s father] threw Mr. Van Pelt’s mother down a flight of stairs, causing her to lose her ninth child. Mr. Van Pelt and his siblings were aware as young children that their baby sister Rose died as a result of this horrific incident.
“The jury and . judge should have known that Mr, Van Pelt’s father often threatened to kill Mr. Van Pelt’s mother in front of him and his siblings. The children observed Mr. Van Pelt’s father hold a shotgun to Mr. Van Pelt’s mother’s head and threaten to shoot her. On one occasion Mr. Van Pelt and his siblings were in the family car. Their father forced their mother to stand in front of the car and threatened to run her over.
“Counsel should have presented testimony from Mr. .Van Pelt and his siblings that they never remembered their mother enjoying herself or feeling happy. Seeing constant abuse inflicted upon their mother made it nearly impossible for Mr. Van Pelt and his siblings to remember a time when their mother was happy.
“Mr. Van Pelt’s mother suffered a stroke years later, after Mr. Van Pelt and his siblings had moved out of their parent’s home. Mr. Van Pelt’s younger sister, Sherry, would have testified that their mother’s stroke was the result of the abuse their mother suffered at the hands of their father. Mr. Van Pelt’s father kicked their mother out of the house while she was recovering from her stroke. Mr. Van Pelt’s father removed their mother’s belongings while she was in the hospital. Mr. Van Pelt’s father moved his girlfriend in before his wife returned home. Mr. Van Pelt’s father told Mr. Van Pelt’s mother that she could only remain to the home as a maid for him and his girlfriend.”
(C. 27-28; 40-43.)
This claim is not pleaded with sufficient specificity to satisfy the requirements in *744 Rule 32.3 and Rule 32.6(b). Van Pelt failed to explain how further investigation of “the physical, sexual and emotional abuse of Van Pelt’s mother by his father” would have changed the result of his trial. Moreover, as noted by the circuit court in its order, the vast majority of facts Van Pelt alleged in his petition were testified to by either Brian Van Pelt or Dale Van Pelt. Indeed, our review of the record on direct appeal supports the circuit court’s conclusion. Accordingly, the circuit court’s summary dismissal of this claim was proper.
6.
Van Pelt next contends that trial counsel failed to adequately investigate how Van Pelt’s father subjected Van Pelt and his siblings to alcoholism, forced labor, and manipulation. In his petition, Van Pelt alleged:
“Counsel failed to ask Mr, Van Pelt or five of his siblings about their father and his influence on them. Furthermore, counsel failed to conduct a thorough interview of Brian Van Pelt or Dale Van Pelt about their father’s behavior. Counsel never learned that Mr. Van Pelt’s father, Thomas Jefferson Van Pelt, is regarded by his children as a belligerent alcoholic, an abuser, a womanizer, and a perpetual thief. Counsel should have discovered that Mr. Van Pelt and his siblings blame their father for the traumatic childhood they experienced.
“Counsel did not investigate the ways in which Mr. Van Pelt’s father utilized his children for personal gain at their expense. Counsel did not learn from Mr. Van Pelt and his siblings that Mr. Van Pelt’s father forced them to perform labor-intensive tasks inappropriate for children. Counsel failed to discover that Mr. Van Pelt’s father involved his children in thievery, forcing them to steal or to accompany him while he stole.
[[Image here]]
“The judge and jury should have known Mr. Van Pelt and his siblings viewed their father as a terrible husband and a tyrannical father. Mr. Van Pelt and his siblings describe their father as a belligerent alcoholic, an abuser, a perpetual thief, and a womanizer.
“Counsel should have presented testimony that Mr. Van Pelt’s father’s alcoholism affected Mr. Van Pelt, his siblings, and their mother in every aspect of their lives. Mr. Van Pelt’s father drank from when he woke up until he went to sleep. At night, Mr. Van Pelt’s father always drank at least three to six beers, in addition to the numerous beers he had drunk throughout the day.
“On some occasions Mr. Van Pelt’s father would spend his entire paycheck on alcohol and gambling before coming home. The family was left with little money for living expenses. Mr, Van Pelt’s father would stay out drinking until midnight. Mr. Van Pelt and his siblings went without dinner until their father returned home.
“The judge and jury should have known that when Mr. Van Pelt’s father was at home, he was angry and violent. Sometimes during his angry episodes, he would break the family’s furniture and then burn it. He frequently forced Mr. Van Pelt and his siblings to stand outside with their heads on a picnic table for extended periods of time. It did not matter to their father that this caused them much pain.
“Trial counsel should have presented testimony that Mr. Van Pelt’s father assigned Mr. Van Pelt and his siblings tedious and difficult tasks that are inappropriate for children. Mr. Van Pelt required his children work year round. *745 Common tasks included forcing Mr. Van Pelt and his siblings to chip mortar off of used bricks their father had stolen. Mr. Van Pelt and his brothers had to work daily to retrieve their father’s sinking boat from the river behind their house. The boat had holes and was in need of repair. The boat filled up with water everyday. • Mr. Van Pelt and his brothers had to use buckets to remove water from the sinking boat. The children did this in freezing cold temperatures during the winter.
“The jury should have learned that Mr. Van Pelt’s father forced Mr. Van Pelt and his siblings to work for friends. Mr. Van Pelt’s father assigned the children to work for friends and then his father received payment for his children’s work. Mr. Van Pelt and his siblings rebuilt a pier for one of their father’s friends, and cleared fallen trees for others; If Mr. Van Pelt and his siblings did not obey them father and complete these tasks, they were beaten.
“While the Van Pelts-lived in Shady Side, Maryland, Mr. Van Pelt’s father bought a small pieee of property and forced Mr. Van Pelt and his siblings to build a two-story house by hand. Mr. Van Pelt and his siblings used hand shovels to dig the foundation- for the house. Their father took the children to this property on a nightly basis. Mr. Van Pelt and his siblings worked on the home after school, late into the night. Even the youngest children, who were in elementary school at the time, were subjected to these long hours of labor at the construction site. Mr. Van Pelt’s father did not have the necessary permits to build this house, and he ignored the many government citations he received.
“The jury should have learned that Mr. Van Pelt’s father forced Mr. Van Pelt and his siblings to participate in criminal activities. Mr. Van Pelt’s father, a thief, frequently stole from retail stores, the county government, and his employers. He taught Mr. Van Pelt and Mr. Van Pelt’s siblings how to steal, and he frequently made them.help him steal. He would use Mr. Van Pelt and his siblings to avoid the consequences of his criminal acts by bringing them to court and forcing them to tell the judge that he was innocent.
“Trial counsel should have presented testimony that Mr. Van Pelt’s father regularly took Mr. Van Pelt and his siblings to county construction [sites] and forced them to fill his truck with county-owned construction materials like gravel or lumber.
“Mr. Van Pelt’s siblings would have testified that their father was once caught stealing a television while the children waited in the car outside the store. His father was arrested and taken away, leaving Mr. Van Pelt and his siblings stranded because they were too young to drive. Mr, Van Pelt and his siblings stayed in the car for hours waiting for someone to come get them.
“Gounsel should have presented testimony that Mr. Van Pelt’s father forced Mr. Van Pelt to work with him and participate in illegal activities more than the other children because Mr. Van Pelt was his favorite child.
“The jury and judge should have known that the abuse Mr. Van Pelt and his siblings suffered prevented Mr. Van Pelt and his siblings from developing normal sibling relationships. They could not play or interact like children because their lives were dominated by constant fear of their father.
“Mr. Van Pelt’s father not only lacked respect for Mr. Van Pelt and his siblings, he also lacked any respect for Mr. Van Pelt’s mother. • Counsel should have *746 presented testimony that Mr. Van Pelt’s father frequently cheated on Mr. Van Pelt’s mother with strangers and even neighbors. Mr. Van Pelt and his siblings were aware of their father’s sexual exploits. Mr. Van Pelt’s siblings got in fights with other children at school because of their father’s sexual relationships with the other children’s mothers. Their father also took them to women’s houses and made the children wait in the car while he participated in sexual acts inside. The children were aware of the purpose of these visits.
“Mr. Van Pelt’s father had a violent temper. His father displayed his temper at home and in public. Once, while Mr. Van Pelt was in the car with his father, someone cut off Mr. Van Pelt’s father in traffic. Mr. Van Pelt’s father responded by taking out a shotgun he carried with him and shooting at the car that cut him off.
“Mr. Van Pelt’s father lacked any respect for his neighbors and actively harassed them. He kept many pets for the purpose of acting as a neighborhood nuisance and bully. He specifically kept a rooster in order to disturb his neighbors every morning with the rooster’s crowing. He also had vicious German Shepherds, and he named one of his dogs ‘Nigger.’ The Van Pelts lived in a primarily black neighborhood at the time they had this dog, and Mr. Van Pelt’s father would purposefully let the dog loose so that he could yell ‘Nigger’ loudly around the neighborhood when calling for the dog to return. Mr. Van Pelt’s siblings would have testified that they understood their father’s behavior was wrong, and they were humiliated that they were unable to stop him. Their father’s behavior also deeply impacted the children because it impaired their ability to befriend neighbors and increased their isolation.”
(C. 28; 43-47.)
This claim is not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). Van Pelt failed to explain how further investigation of how his father subjected him and his siblings to alcoholism, forced labor, and manipulation would have changed the result of his trial. In his petition, Van Pelt made bare allegations, much of which encompassed evidence that had been presented during the penalty phase of his capital-murder trial. As noted earlier in this opinion and by the circuit court in its order, the vast majority of the facts regarding Van Pelt’s childhood alleged in Van Pelt’s petition were testified to by either Brian Van Pelt or Dale Van Pelt. Thus, any further testimony elicited from Van Pelt’s other siblings would be cumulative. Indeed, as already explained, “the failure to present additional mitigating evidence that is merely cumulative of that already presented does not rise to the level of a constitutional violation.” Daniel v. State, 86 So.3d at 429-30. Accordingly, the circuit court’s summary dismissal of this claim of ineffective assistance of counsel was proper.
7.
Van Pelt also contends that trial counsel failed to investigate Van Pelt’s mother’s inability to care for Van Pelt and his siblings. In his petition, Van Pelt alleged:
“Counsel failed to ask Mr. Van Pelt or any of his siblings about their mother’s inability to care for them as children. Mr. Van Pelt’s mother, Hazel Louise Van Pelt, was an alcoholic for the entirety of her children’s childhoods. She used alcohol to self-medicate in response to her husband’s abuse, leaving her emo *747 tionally vacant and physically unable to care for her eight children.
[[Image here]]
“Trial counsel should have presented testimony that Mr. Van Pelt’s mother was unable to protect her children from their father or to help them deal with the abuse their father inflicted upon them. Mr. Van Pelt’s mother was herself in too great a state of suffering to be a mother to her children.
“The judge and jury should have known that Mr. Van Pelt’s mother dealt with the abuse her husband inflicted by self-medicating with alcohol. Mr. Van Pelt’s mother was an alcoholic throughout her marriage to Mr. Van Pelt’s father, Mr. Van Pelt and his siblings knew that their mother drank while they were at school. Every evening they watched their mother drink heavily before Mr. Van Pelt’s father got home. When Mr. Van Pelt’s father returned home, Mr. Van Pelt and his siblings witnessed their parents drink until they ran out of alcohol. When they drank all of the alcohol in the house, their parents would often engage in violent fights about who drank the last beer.
“The judge and jury should have learned that none of Mr. Van Pelt’s siblings remember his mother decreasing her alcohol use for any significant period of time. She continued to drink heavily during her pregnancies, including when she was pregnant with Mr. Van Pelt, and while she was nursing the infants.
“Counsel should have presented testimony that Mr. Van Pelt’s mother’s alcohol dependency left her emotionally vacant. She rarely stood up to Mr. Van Pelt’s father or became involved in any aspect of her children’s lives. Mrs. Van Pelt silently stood by as her husband physically and emotionally abused their children. At times she aided her husband in his abusive ways. When Mr. Van Pelt’s father left the house, he would often assign tasks for each of his children to perform before he returned home. If the children did not finish their assigned tasks, Mr. Van Pelt’s mother would report to her husband who had disobeyed his orders.”
(C. 19; 47-48.)
This claim is not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). Van Pelt failed to identify witnesses who would have testified at trial about Van Pelt’s mother’s inability to care for Van Pelt and his siblings and failed to identify what testimony could have been offered by each witness in this regard. Further, Van Pelt failed to explain how further investigation into Van Pelt’s mother’s inability to care for her children would have changed the result of his trial. Accordingly, the circuit court’s summary dismissal of this claim was proper.
8.
Van Pelt also contends that trial counsel “failed to investigate the ways in which Mr. Van Pelt suffered neglect, including inadequate schooling and a lack of basic necessities like food, heat, and medical care.” (Van Pelt’s brief, p. 34.) In his petition, Van Pelt alleged;
“Counsel failed to investigate the ways in which Mr. Van Pelt’s parents neglected him and his siblings. Counsel did not discover that Mr. Van Pelt and his siblings lacked basic necessities such as food and heat, and received inadequate schooling due to a lack of support at home. Counsel did not acquire Mr. Van Pelt’s school records, which would have demonstrated this.
[[Image here]]
“The jury and the judge should have known that Mr. Van Pelt’s parents did *748 not provide him and his siblings -with basic necessities. Mr. Van Pelt’s parents provided the children with little emotional or financial support.
“Counsel failed to present testimony that Mr. Van Pelt’s parents 'did not provide Mr. Van Pelt and his siblings with sufficient food. At times, Mr. Van Pelt and his siblings ate just Cheerios with water for dinner. On other occasions, Mr. Van Pelt’s father purchased steak for himself and then ate it in front of Mr. Van Pelt and his siblings, while they went without anything to eat.
“Mr. Van Pelt and his siblings had inadequate housing, living in small apartments or homes. For the majority of Mr. Van Pelt’s childhood, he and four of his brothers shared one small room. When Mr. Van Pelt was about 10 years old, he, his parents, and six of his siblings lived in a small house in rural Maryland that was only intended for summer occupancy. The house was about 800 square feet in total. While Mr. Van Pelt lived there, a tree fell on the house and crashed into the ceiling of the boys’ room, Mr. Van Pelt’s father refused to fix the ceiling, and merely placed a tarp over the large hole left by the tree. These living conditions became particularly difficult to withstand in the winter months because the house’s only heat source was a cooking stove.
“The jury and judge never learned that Mr. Van Pelt was a poor student due to his parents’ transient lifestyle and refusal to support him. In middle school, Mr. Van Pelt stopped attending school on a regular basis, causing him to earn zero credits in the eighth grade. Mr. Van Pelt had dropped out of school completely by the age of fifteen.
“Trial counsel should have presented testimony that Mr. Van Pelt and his siblings did not have a family doctor and did not receive any regular medical care. Mr. Van Pelt and his siblings were not given medical attention even when they were sick or injured.”
(C. 19-20; 48-50.)
This claim is not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). Van Pelt failed to identify witnesses who would have testified at trial that Van Pelt suffered neglect, including inadequate schooling and a lack of basic necessities like food, heat, and medical care. Van Pelt also failed to identify what testimony could have been offered by each witness in this regard. Further, Van Pelt failed to explain how conducting a more extensive investigation into his parents’ neglect of Van Pelt and his siblings would have changed the result of his trial. Accordingly, the circuit court’s summary dismissal of this claim was proper.
9.
Van Pelt contends that trial counsel failed' to investigate Van Pelt’s “extreme isolation” as a child. (Van Pelt’s brief, p. 36.) In his petition, Van Pelt alleged:
“Trial counsel did not learn of the social and physical isolation that Mr. Van Pelt endured as a child and adolescent. Counsel failed to- learn of the ways in which Mr. Van Pelt’s father maintained control over his wife and children by isolating them from others. Counsel did not adequately interview Mr. Van Pelt or his siblings, and did not learn that the social isolation imposed by their father had a serious impact on Mr. Van Pelt’s development during his formative years.
[[Image here]]
“Trial counsel should have presented testimony that Mr. Van Pelt’s father maintained control over his wife and *749 children by moving his family to very remote places with few neighbors. For example,- when he moved the family to Shady Side, Maryland they lived in a summer vacation area. For ten months out of the year the family had few neighbors.
“The jury and judge should have known that Thomas Van Pelt did not allow his wife to have friends or use a phone. He prevented his wife from leaving home by not permitting her to drive. He also refused to allow her to work for many years, despite the poverty to which his children were subjected.
“The jury and judge never learned that Mr. Van Pelt’s father did not permit the children to play with friends, and they .were never allowed to have guests over to the house. Them father forbade them from participating in extra-curricular, activities at school. Their father once drove down to the school to pick up Brian Van Pelt when he found out that Brian was trying out for the high school soccer team.”
(C. 29; 50.)
This is the entirety of Van Pelt’s claim in this regard and clearly fails to satisfy the pleading requirements of Rule 32.3 and Rule 32.6(b). Van Pelt failed to identify witnesses who would have testified about Van Pelt’s , isolated childhood and what each witness would have testified to during trial. Further, Van Pelt failed to allege with specificity how the evidence of his “extreme isolation” would have altered the outcome of his trial. Instead, Van Pelt makes base allegations in his petition that the failure to present evidence of his isolation as a child was prejudicial. Accordingly, the circuit court’s summary dismissal of this claim was proper.
10.
Van Pelt also contends that his trial counsel failed to discover evidence of ongoing violence between Van Pelt and his siblings as children. In his petition, Van Pelt alleged:
“Counsel failed to discover evidence of ongoing violence between the Van Pelt siblings as they were growing up. Counsel never learned of the harmful ways in which Mr. Van Pelt’s father encouraged violence between Mr. Van Pelt and his siblings.
«
“The Van Pelt children were influenced by the violent environment in which they lived. ■ Their parents’ violent fights modeled an unhealthy and dangerous form of conflict resolution for the children, which manifested in the siblings’ interactions with each other.
“The jury and jüdge should have known that the Van Pelt children’s fights amongst themselves sometimes involved physical violénce that escalated until they were wounded and bleeding. Mr. Van Pelt fought frequently with his siblings, especially his older brother Brian, and their fights frequently devolved into violent brawls. .
“Trial counsel should have presented testimony that Mr. Van Pelt’s older sister Ivy fought frequently with the other siblings, as well as with kids at school. She was suspended at least once for her involvement in violent - school fights. Ivy’s fights with other children often involved Mr. Van Pelt and his other siblings.
“The jury and judge should have learned that Mr. Van Pelt’s father encouraged their fighting. The children’s father would beat them if he found out that they had lost a fight. - When Mr. Van Pelt was ten years old their father arranged a fight between the Van Pelt children and another group of children who went to their school. Mr. Van *750 Pelt’s youngest brother, Murray, tried to escape the arranged fight. Murray was beaten badly by the other group of kids. When the Van Pelt children arrived at home, them father beat Murray even more for losing the fight. Murray was about seven, years old when this took place.”
(C. 29; 51.)
This claim is not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and. Rule 32.6(b). Van Pelt failed to identify witnesses who would-have testified at trial about ongoing violence between Van Pelt and his siblings as children and failed to identify what testimony could have been offered by each witness in this regard. Further, Van Pelt failed to explain how further investigation would have changed the result of his trial. Accordingly, the circuit court’s summary dismissal of this claim was proper.
H.
Van Pelt contends that counsel also failed to investigate Van Pelt’s “loving relationship with-his own children.” (Van Pelt’s brief, p. 39.) In his petition, Van Pelt alleged:
“Counsel failed to investigate Mr. Van Pelt’s role as a caring and involved father. Trial counsel did not adequately interview Mr. Van Pelt about his relationship with his children and neglected the many other avenues by which they could have obtained this information. Counsel never spoke with Mr. Van Pelt’s teenaged children, nor did Counsel interview the mother of his children, Susan Gibson. Trial counsel failed to speak with Mr. Van Pelt’s , ex-girlfriends Cheryl Methvin and Patti Lawson. Ms. Methvin and Ms. Lawson were both very familiar with Mr. Van Pelt’s close relationship with his children.
[[Image here]]
“Trial counsel should have presented testimony that Mr. Van Pelt was married to the mother of his children until his son was eight years old and his daughter was five years old. During those years, Mr. Van Pelt lived with his wife and children and participated actively in parenting. The jury and judge should have known that Mr. Van Pelt was thrilled to be a father, and was thoughtful and intentional about the role he would play as a parent. He frequently took his son to work with him when he owned a small engine repair business, and he allowed his son to play while he worked. These types of everyday interactions meant the world to Mr. Van Pelt.
“The jury and judge never leaimed that Mr. Van Pelt worked hard to ensure that he could provide financially for his family, and he was consistently viewed as a dedicated father by those who knew him. Despite his lack of education or training, Mr. Van Pelt managed to purchase a house for his family, and spent long hours working to renovate it himself.
“Counsel should have presented testimony that Mr. Van Pelt remained a dedicated father after he got divorced in 1996. Mr. Van Pelt’s ex-wife was assigned primary custody of their children when they divorced. Mr. Van Pelt drove long hours on his visitation weekends to ensure that he would have the quality time with his children that he desired. Mr. Van Pelt was living hours away from his children’s mother, but drove to her home to pick them up on weekends. He would then drive them all the way back to his ex-wife’s house when the weekend was over. It took Mr. Van Pelt between two and four hours to drive from his various construction jobs to pick up his children. His *751 ex-wife never offered to pick up the children or meet him halfway.
“The jury and judge .should have known that Mr. Van Pelt’s adolescent children adored their father and looked forward to the weekends they spent with him. As the children grew older, Mr. Van Pelt always maintained a room for them in every home in which he lived. He planned family activities for the weekends they spent with him, including trips to the water park and to the beach. Mr. Van Pelt took his children to the grocery store on every visit, so that they would have their favorite foods at his house, and threw them birthday parties each year.
“Counsel should have presented evidence that despite the fact that Mr. Van Pelt enjoyed spending time with his children and playing with them, he also participated actively in constructive parenting. He enforced rules while the children were with him, and disciplined them when necessary. Both of Mr. Van Pelt’s children respected him and obeyed him as their father.”
(C. 29; Supp. R. 44-45.)
This claim is not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). Van Pelt failed to identify witnesses who would have testified at trial about his kindness and failed to identify what testimony could have been offered by each witness in this regard. Further, Van Pelt failed .to explain how further investigation would have changed the result of .his trial.
Moreover, evidence of Van Pelt’s relationship with his children was presented to the jury during the penalty phase of Van Pelt’s capital-murder trial. Brian Van Pelt testified that Van Pelt “loved his children” and “treated them fantastic.” (Trial R. 1040.) Brian described his brother as a “fantastic father.” (Trial R. 1040.) Likewise, Dale Van Pelt testified that Van Pelt was a “good parent” who was “very loving [and] affectionate toward his children.” (Trial R. 1071.)
For these reasons, summary dismissal of this claim of ineffective assistance of counsel was proper.
12.
Van Pelt also contends that his trial counsel failed to investigate Van Pelt’s “generosity and support for friends and siblings.” (Van Pelt’s brief, p. 41.) In his petition, Van Pelt alleged:
“Trial counsel failed to investigate the fact that Mr. Van Pelt was widely considered to be [a] very generous and caring person. Mr. Van Pelt’s siblings, father, and friends would have told trial counsel that he was a generous person who was willing to go out of his way to help his family and friends. Counsel never discovered that some of Mr. Van Pelt’s siblings relied upon him in times of need.
[[Image here]]
“Trial counsel should have presented testimony from Mr. Van Pelt’s siblings that he has always been a dependable support for them and would help them in any way he could. He is described by his siblings as a generous person who is consistently willing to give to others, despite his lack of excess.
“The judge and jury should have known that Mr. Van Pelt took in his brother Brian after Brian left the military and needed a place to stay. Mr. Van Pelt also allowed his younger brother TJ and younger sister Sherry to live with him at times when they were in need of housing. Though Mr. Van Pelt was not financially stable at that time, he was eager to do what he could to help his siblings who were in need. .
*752 “Mr. Van Pelt’s sister Sherry would have testified that Mr. Van Pelt was the most helpful and generous of her siblings. He helped her to care and provide for their ailing mother. While Mr. Van Pelt’s mother was living with Sherry, Mr. Van Pelt bought Sherry a van to help her support them mother. Mr. Van Pelt also traveled to Florida regularly to assist Sherry and his mother with maintenance on their home. Mr. Van Pelt painted their house, and also spent his vacation building shelves for them,”
(C. 29-30; Supp. R. 45-46.)
This claim is not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). Van Pelt failed to explain how tether investigation of his “generosity and support for friends and siblings” would have changed the result of his trial.
Moreover, the jury heard mitigation evidence concerning Van Pelt’s generosity and kindness toward his siblings. Brian Van Pelt testified that Van Pelt “cobbled together a couple of bikes out of the remains of [other] bikes” for his siblings as children after Van Pelt’s father destroyed their bikes. (Trial R. 1033.) Brian also described occasions when he and Van Pelt were children and Van Pelt would finish the chores for Brian. According to Brian, Van Pelt frequently helped his siblings with repairs to their respective houses.
For these reasons, summary dismissal of this claim of ineffective assistance of counsel was proper.
13.
Van Pelt also contends that trial counsel failed to explore during the penalty phase of trial Van Pelt’s extensive work history. In his petition, Van Pelt alleged:
“Counsel neglected a crucial element of the mitigation investigation by failing to explore Mr. Van Pelt’s extensive work history.' Counsel did not adequately interview Mr. Van Pelt or his relatives about his background regarding employment and did not learn that Mr. Van Pelt was a hard worker with considerable construction skills. ■ Trial counsel failed to acquire employment records or otherwise document Mr. Van Pelt’s work history.
[[Image here]]
“The jury and judge never learned that Mr. Van Pelt exhibited a strong work ethic very early on in his life. When Brian Van Pelt and Mr. Van Pelt collected firewood to heat their home during the winter, Mr. Van Pelt would work tirelessly until he and his siblings had found enough firewood. Knowing that his family was reliant upon their work for heat was a motivating force. Even when Mr. Van Pelt and his siblings were assigned abusive tasks, Mr. Van Pelt was always willing to complete the tasks and worked harder than his siblings to finish the jobs well. He encouraged his siblings to do the same.
“Counsel should have presented testimony that Mr. Van Pelt’s hard work enabled him to open two successful small businesses. Mr. Van Pelt operated a concrete contracting company in North Carolina and a small engine repair business in Maryland. Mr. Van Pelt worked out of garages and built the businesses entirely on his own. At one time, he even lived in a storage unit while he worked in order to get his business off the ground.
“Mr. Van Pelt’s former girlfriend, Cheryl Methvin, managed his accounts. She would have testified that he was careful to obey employment laws and claim accurate profits for tax filings. She respected Mr. Van Pelt’s work ethic and skills as a construction worker. Ms. Methvin remembered Mr. Van Pelt *753 worked tirelessly to grow his fledgling business, and that he achieved moderate success rather rapidly. He earned contracts to lay concrete at major developments in the Wilmington, North Carolina, area.”
(C. 30; 53-54.)'
Van Pelt-failed to meet his burden of pleading in regard to this claim. Van Pelt did not plead with specificity what information he could have, but did not, provide counsel about his employment background. Van Pelt failed to plead facts to show how evidence of his hard work and “considerable construction skills” would have changed the result of his trial. Although Van Pelt identifies a former girlfriend as a potential witness on his behalf, Van Pelt does not explain how his former girlfriend’s testimony regarding his conscientious tax payments and compliance with employment laws would have changed the outcome of his trial. Because this claim failed to satisfy the pleading requirements in Rule 32,3 and Rule 32.6(b), summary dismissal was proper under Rule 32.7(d).
14.
Van Pelt also contends that his trial counsel failed to investigate drastic changes in Van Pelt’s life in the year leading up to the offense. In his petition, Van Pelt alleged:
“Trial counsel failed to investigate the drastic changes in Mr. Van Pelt’s life in the months preceding the crime. Counsel did not interview Mr. Van Pelt or his family about the number of life-changing events he experienced in 2004 or his increasingly unstable mental state.
“Trial counsel failed to learn of the recent death of Mr. Van Pelt’s mother and the severe impact her death had on his mental state, Counsel failed to adequately interview Mr. Van Pelt or his siblings about the recent death of their mother.
“Trial counsel did not investigate the end of Mr. Van Pelt’s relationship with Patti Lawson in-June of 2004.
“Counsel failed to learn that Mr. Van Pelt had been denied time with his children in the months preceding the crime. Trial counsel did not adequately interview Mr. Van Pelt about his relationship with his children, and never discovered that he had not seen his children for several months before his arrest. Counsel could have uncovered this information if they had adequately interviewed Mr. Van Pelt’s ex-wife or Mr. Van Pelt’s children.
“Trial counsel failed to learn that Mr. Van Pelt had encountered problems due to alcohol abuse in the months before the crime. Counsel did not interview Mr. Van Pelt about the job he had recently lost in Pennsylvania as a result of alcohol abuse.
[[Image here]]
“Mr. Van Pelt’s mother died on April 19, 2004. The judge and jury should have learned that Mr. Van Pelt traveled to Florida to be with his mother as soon as he was notified of her worsening condition. The death of his mother was extremely difficult for Mr. Van Pelt. Several of his siblings noted that it seemed to have taken a greater toll on him than it had on the other siblings. The siblings gathered for a memorial service during the summer of 2004 to spread their mother’s ashes. At the service Mr. Van Pelt asked to keep one-eighth of his mother’s ashes to preserve her memory.
“Trial counsel should have presented evidence that Mr. Van Pelt had encountered increased difficulties with alcohol abuse in the wake of his mother’s death. He was drinking heavily to deal with the pain of her loss and the mounting uncer *754 tainty in his life. Mr. Van Pelt was fired from a construction site in Pennsylvania in May, 2004, as a result of his problems with alcohol abuse.
“Counsel failed to elicit testimony that Mr. Van Pelt faced the end of his three-year relationship with Patti Lawson in June 2004. Ms. Lawson broke up with him and kicked him out of the home that he had purchased for them. Mr. Van Pelt was devastated. He had to stay with a friend for a few days, and then moved to Memphis, Tennessee, to work on a new construction site.
“The jury and judge should have known that Mr. Van Pelt encountered diminished access to his children around the time that his relationship with Patti Lawson ended. His children’s mother had became increasingly inflexible and hostile. She refused to allow Mr. Van Pelt to see his children on many of his assigned weekends and holidays. During the course of 2004, Mr. Van Pelt’s time with his children dwindled from one or two weekends per month, to one visit every three or four months. Mr. Van Pelt had not been allowed to see his children at all for several months before he was arrested.”
(C. 30-31; 54-55.)
This claim is not pleaded with sufficient specificity to satisfy the requirements in Rule 32.3 and Rule 32.6(b). In his petition, Van Pelt failed to identify witnesses who would have testified at trial about the events in 2004 preceding the murder of Van Pelt’s wife and failed to explain how further investigation into the events that occurred in 2004 would have changed the result of his trial. Accordingly, the circuit court’s summary dismissal of this claim as insufficiently pleaded was proper.
15.
Van Pelt contends that his trial counsel failed to investigate the “prevalence of psychological disorders and mental illness in the Van Pelt family.” (Van Pelt’s brief, p. 47.) In his petition, Van Pelt alleged:
“Trial counsel failed to interview Mr. Van Pelt about his own mental health or that of his family. Counsel did not ask Mr. Van Pelt about the mental health of his parents, grandparents, siblings, and other immediate relatives.
“Trial counsel did not investigate the prevalence of bipolar disorder, severe depression and schizophrenia among Mr. Van Pelt’s immediate family members. Counsel never spoke to the majority of Mr. Van Pelt’s siblings. Furthermore, counsel’s conversations with the two brothers who testified were so sparse that counsel never uncovered any of this highly relevant evidence.
“Obtaining evidence of mental illness among Mr. Van Pelt’s parents and siblings was a critical responsibility of trial counsel that would have enabled them to present a more adequate and complete depiction of Mr. Van Pelt’s psychological disorders at trial.
[[Image here]]
“The judge and jury should have learned that four of Mr. Van Pelt’s siblings struggle with psychological disorders or mental illnesses that require ongoing treatment and medication.
“Trial counsel should have presented testimony by Dale Van Pelt that he was well into his adult life before he sought treatment for his severe depression, though he believes he has suffered from depression his whole life. He turned to alcohol early in his life, and has struggled to overcome his dependency on alcohol. His depression has been severe at times, leading to the end of a marriage, loss of jobs and difficulty in maintaining friendships. Dale has required *755 therapy, anger management counseling, consistent psychological oversight and ongoing treatment with a variety of antidepressants.
“Counsel should have presented testimony by Brian Van Pelt that he has suffered from depression for many years and that it was debilitating for a period of five years. During this time, he lost the successful business he had begun and his wife left him. It took three years of depression medications for Brian to stabilize, and he still struggles to cope with his depression.
“Trial counsel should have presented evidence that Sherry LaMantia has battled severe depression for much of her adult life, though she has only received treatment during the last decade. Around 2004 and 2005, Sherry was so severely depressed that she struggled to hold a job and raise her children. She eventually sought professional help and now relies heavily on prescription medications to manage her depressive episodes.
“Counsel should have presented evidence that Ivy Reasin has struggled with severe mental illness for many years. She was diagnosed with severe bipolar disorder about ten years ago, and she has relied on prescription medications ever since. Ivy’s depressive episodes would frequently result in violent behavior, and she has a history of domestic violence that is intimately related to her struggle with bipolar disorder. Despite Ivy’s ongoing treatment for bipolar disorder, her symptoms are severe and she is permanently disabled due to her mental illness.”
(C. 31; 56-58.)
Van Pelt failed to meet his burden of pleading in regard to this claim. In his petition, Van Pelt failed to allege what specific information he could have, but did not, provide trial counsel regarding his own mental health or that of his family. Further, Van Pelt failed to identify witnesses who would have testified about Van Pelt’s family’s history of mental illness and failed to plead facts to show how evidence that his family members suffered from bipolar disorder and depression would have changed the result of his trial. Because this claim failed to satisfy- the pleading requirements in Rule 32.3 and Rule 32.6(b), summary dismissal-was proper under Rule 32.7(d).
F.
Van Pelt contends that trial counsel’s failure to adequately investigate Van Pelt’s life and his social history prevented counsel from responding to the State’s cross-examination of witnesses who testified at the penalty phase of the trial. . Specifically, Van Pelt claims that the failure of his trial counsel to fully investigate his life and social history prevented his trial counsel from establishing that Van Pelt’s siblings were not productive and stable members of the community.
In his petition, Van Pelt alleged:
“The State characterized Mr. Van Pelt’s siblings as productive, stable community members who had overcome the challenges of their childhood. They elicited. testimony in this vein from Brian and Dale Van Pelt during cross-examination. An adequate investigation by trial counsel would have revealed that this is a gross mischaracterization with regard to each and every Van Pelt sibling.
“Trial counsel should have elicited testimony that Mr. Van Pelt’s oldest sibling, Jack Madeoy, joined the military to escape the abusive, chaotic home life he endured. Following his discharge, Mr. Madeoy moved to Washington State to *756 separate himself from his emotionally traumatizing background.
“Counsel failed to elicit testimony from Dale Van Pelt that though he currently holds a consistent job, he only works part time at present. Though he is an active parent to his eleven-year-old son, Dale has encountered significant obstacles in his adult life and has struggled constantly to overcome the scars of his first 17 years. Dale Van Pelt struggled with alcohol abuse while he was in the military. He was dismissed from the Navy after six years of service. Dale left after being reduced in rank and was prevented from re-enlistment because of his alcohol abuse. Dale has struggled to maintain employment, and lost the small business he started. He has been married and divorced three times.
“The jury and judge should have known that in addition to her ongoing struggles with bipolar disorder and schizophrenia, Ivy Reasin has led a troubled life. She has a long history of domestic violence in her adult life, and has been arrested on numerous occasions for domestic disturbance incidents. Her most recent arrest for domestic violence resulted from a violent altercation with her father. She has also been non-voluntarily committed for psychological treatment. Ivy used drugs heavily for many years and drank excessively. She continues to struggle with drugs and alcohol. Ivy has never held consistent employment and currently lives on disability for her mental illness.
“The State elicited testimony from Brian Van Pelt that he was employed and was a caring father to his children. However, at the time of the trial, Brian’s marriage was in turmoil and near collapse. The jury and judge should have known that Brian Van Pelt’s life bears evidence .of the lasting marks of his traumatic childhood. He lost the business he had started and suffered severe depression in the years preceding his testimony. To this day, he has a difficult time communicating with others. He is often overly introspective and unable to cope with difficult and life-changing situations.
“Counsel should have presented testimony that Sherry LaMantia has led a tumultuous life ever since she left home at the age of thirteen. She developed dependency on illegal drugs as a young teenager, and was a heavy drug user for many years. She was married and divorced twice, and raised four children as a single parent. Sherry has found it extremely difficult to maintain employment, bouncing frequently between jobs, and is currently unemployed.
“Trial counsel should have presented testimony that TJ Van Pelt turned to drugs as a teenager and also used alcohol heavily for many years. He sold crack cocaine, LSD and other drugs. It took him decades to get clean completely. He works in construction, but has encountered difficulty maintaining consistent employment.
“Murray Van Pelt maintains steady employment and a long-term marriage. But the jury and judge should have known' that even he struggled to acclimate to life beyond the chaotic home in which he was raised. By joining the Army, Murray obtained a sense of stability that had never existed in the Van Pelt family home. He encountered difficulty with alcohol abuse while in the military. Murray was almost expelled from military service because of his alcohol abuse. It took him many years to build a stable life for him and his family.”
(C. 58-60.)
In its order, the circuit court addressed this claim as follows:
*757 “This claim is without merit and belied by the record. The Court and jury were aware that all of Van Pelt’s siblings were, damaged by them childhood. Dale Van Pelt testified that all of his siblings had ‘suffered psychological and emotional damage’ and described his mental health problems. (R. 1072.) There is no reasonable probability that additional information regarding the difficulties That Van Pelt’s siblings have had in their adult lives would have changed the result of Van Pelt’s trial. Consequently this claim is without merit....
“This claim is also insufficiently pleaded. Van Pelt makes a number of factual allegations regarding the travails that his ■ siblings have gone through since childhood. However, he fails to identify a single witness who would testify to these facts, fails to show that the testimony would be admissible, and fails to explain how it would have changed the result of his trial.”
(C. 736-37.) We agree with the circuit court.
As the circuit court noted in its order, Van Pelt’s assertions on this issue in his Rule 32 petition amounted to nothing more than bare factual allegations without reference to witnesses who would testify to those facts. Further, Van Pelt failed to state that the evidence would be admissible and that the evidence would have changed the result of his trial. Regarding the merits of Van Pelt’s claim, the record supports the circuit court’s conclusion that the jury was aware that all the Van Pelt children were damaged by their childhood. In addition to the testimony of Dale Van Pelt, Brian Van Pelt referenced the difficulties his siblings had in trying to forget “what [they] went through growing up.” (R. 1032.) Brian testified that some of his siblings could be described as “outlaws or people who were not law abiding citizens” and testified that Van Pelt’s sister Ivy had a “big problem with drugs in the past” and a “problem with the truth.” (R. 1055-56.) Because Van Pelt’s claim failed to satisfy the pleading requirements in Rule 32.3 and Rule 32.6(b), and his claim was without merit, summary dismissal was proper under Rule 32.7(d).
G.
Finally, Van Pelt contends that his “trial counsel were ineffective for failing to adequately develop the limited evidence presented at trial.” (Van Pelt’s brief, p. 52.) In his petition, Van Pelt divided this claim into the following subclaims: (1) trial counsel’s failure to adequately prepare and present expert testimony by Dr. James Crowder concerning Van Pelt’s psychological examination and (2) trial counsel’s failure to adequately prepare Brian Van Pelt and Dale Van Pelt for testimony at the penalty phase of trial.
1.
Regarding trial counsel’s failure to adequately prepare and present the expert testimony of Dr. Crowder, Van Pelt alleged in his petition:
“Counsel failed to acquire [a] psychological expert in a timely fashion, resulting in a poor and inadequate assessment of Mr. Van Pelt. Counsel filed a motion for an expert on October 30, 2006, more than 15 months after the capital indictment and appointment of trial counsel. Furthermore, counsel first spoke to Dr. Crowder only six days before trial. The penalty phase ultimately took place a mere ten days after trial counsel’s first contact with Dr. Crowder.
“Trial counsel failed to adequately communicate with and prepare the psychological expert before penalty phase testimony. Counsel failed to properly explain the purpose of mitigation and *758 the need for thorough examination of Mr. Van Pelt in the context of his family history. Prior to trial, Dr. Crowder only spoke with Brian Van Pelt two times. Counsel’s first contact with Brian Van Pelt was two days before. This contact consisted of a 45-minute telephone conversation. Trial counsel failed to provide Dr. Crowder with a social history or family history for Mr. Van Pelt, making it difficult for Dr. Crowder to make a fully informed assessment of Mr. Van Pelt.
“Counsel failed to adequately interview Dr. Crowder following his assessment of Mr. Van Pelt. Trial counsel failed to' learn how Dr. Crowder assessed Mr. Van Pelt and the conclusions Dr. Crowder had reached. Therefore, Dr. Crowder presented testimony that did not serve as mitigation evidence, but rather ' acted as aggravation evidence against Mr. Van Pelt.”
(C. 32-33.)
Van Pelt failed to plead sufficient facts in support of this claim to satisfy the requirements of Rule 32.3 and Rule 32.6(b). Van Pelt generally asserted that his trial counsel failed to adequately communicate with Dr. Crowder regarding the purpose of mitigation evidence before the penalty phase of trial but did not specifically allege what trial counsel should have communicated to Dr. Crowder. Further, Van Pelt failed to allege how Dr. Crowder’s testimony would have been different if he had been informed of this information and how, knowing this information, Dr. Crowder’s testimony would have resulted in a life sentence instead of a death sentence. Accordingly, the circuit court’s summary dismissal of this claim was proper.
2.
In claiming that trial counsel failed to adequately prepare Brian Van Pelt and Dale Van Pelt to testify, Van Pelt alleged in his petition:
“Counsel spoke with Brian Van Pelt on a limited basis prior to the start of trial. The extent of trial counsel’s discussion with Dale Van Pelt was more restricted, Brian Van Pelt was the only person who had contacted Dale prior to his arrival at trial. ■ Neither brother was adequately given notice that their testimony was desired. Brian and Dale Van Pelt were unprepared to attend trial. The brothers were only able to arrive mid-trial.
“Trial counsel failed to develop the testimony of both brothers, leading to significant omissions in their testimony. Neither Dale nor Brian was aware of the purpose of his testimony, or the greater purpose of mitigation evidence. Dale Van Pelt felt frustration immediately after testifying because the purpose of his testimony had not been explained to him before he testified.”
(C. 33.)
In its order, the circuit court found this claim to be without merit and insufficiently pleaded, stating, in relevant part:
“This claim is without merit. As the Court recalls, both Brian and Dale Van Pelt gave extensive and detailed testimony regarding the circumstances of Van Pelt’s childhood and his character. It is abundantly clear from the detailed nature of their testimony that the brothers were prepared and ready to testify. Having presided over the trial, the Court finds that there is no reasonable probability that additional preparation of these witnesses would have changed the result of trial....
“This claim is also insufficiently pleaded. Van Pelt fails to specifically allege what additional preparation trial counsel could have undertaken, fails to allege how such preparation would have *759 changed the brothers’ testimony, and fails to explain how that testimony would have produced a different result at trial.”
(C. 735.)
We agree with the circuit court. Van Pelt failed to meet his burden of pleading with regard to this claim. Van Pelt failed to allege what additional preparation trial counsel should have undertaken to ready Brian and Dale Van Pelt to testify at trial. Van Pelt also failed to allege how such preparation would have changed the broth-’ ers’ testimony and how that changed testimony would have produced a different result at trial. Moreover, the record in Van Pelt’s direct appeal supports the circuit court’s conclusion that Van Pelt’s claim is without merit. The record indicates that Brian Van Pelt and Dale Van Pelt testified extensively regarding their respective childhoods and Van Pelt’s childhood.1 Accordingly, the circuit court’s summary dismissal of this claim was proper.

Conclusion

For the reasons stated above, the circuit court’s summary dismissal of Van Pelt’s Rule 32 petition was proper. Therefore, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH and BURKE, JJ., concur. JOINER, J., concurs-in part and concurs in the result in part, with opinion.

. On direct appeal, this defendant’s name appeared throughout the record as one word— Vanpelt. See Vanpelt v. State, supra. In the record in this Rule 32 proceeding, however, this defendant's name is spelled as two words—Van Pelt.

. Van Pelt does not assert on appeal, as he did in his petition, that the State withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). It is well settled that this "Court "will not review issues not listed and argued in brief.” Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App. 1995). '“[A]lle-gations ... not expressly argued on ... appeal ... are deemed by us to be abandoned.’ ” Burks v. State, 600 So.2d 374, 380 (Ala.Crim.App.1991) (quoting United States v. Burroughs, 650 F.2d 595, 598 (5th Cir.1981)). Because Van Pelt chose not to pursue this allegation in his brief on appeal, it is deemed to be abandoned.

. The record indicates that Van Pelt was represented by Randall Susskind and Ryan Becker of the Equal Justice Initiative when he filed his Rule 32 petition in May 2012. In July 2012, Susskind and Becker moved to stay the proceedings or, in the alternative, to appoint qualified counsel to represent Van Pelt in the Rule 32 proceedings. The circuit court denied the motion to stay the proceedings but appointed John McKelvey as counsel for Van Pelt. McKelvey immediately moved to withdraw, and the circuit court appointed Nathan Johnson to represent Van Pelt on October 10, 2012. The circuit court subsequently granted Susskind and Becker’s motion to withdraw on November 14, 2012.

. Van Pelt also alleged in his petition that trial counsel "failed to file and argue motion at pre-trial hearings” and when prompted by the trial court relied on arguments contained in motions rather than "articulating their arguments in court.” (C. 20.) Van Pelt, however, has abandoned this issue on appeal because he does not mention this specific allegation, much less make any argument regarding it, in his brief on appeal. See Brownlee v. State, 666 So.2d 91, 93 (Ala. Crim.App.1995) (holding that appellate court will not review issues not listed and argued in brief).

. We recognize that our holding on direct appeal regarding the admissibility of the dog-tracking evidence was the result of the application of the plain-error standard of review. See Rule 45A, Ala. R.App, P. In Ex parte Taylor, 10 So.3d 1075 (Ala.2005), the Alabama Supreme Court explained:
"Although it may be the rare case in which the application of the plain-error test and the prejudice prong of the Strickland test will result in different outcomes, a determination on direct appeal that there has been no plain error does not automatically foreclose a determination of the existence of the prejudice required under Strickland to sustain a claim of ineffective assistance of counsel. In determining whether to grant a Rule 32 petitioner relief on an ineffective-assistance claim, a court must examine both the plain-error and prejudice standards of review.”
10 So. 3d at 1078. In other words, a finding of no plain error regarding an underlying substantive issue on direct appeal is a relevant factor to consider in determining whether a petitioner was prejudiced by counsel’s deficient performance relating to that substantive issue, but it is not determinative. See Lee v. State, 44 So.3d 1145, 1163 (Ala.Crim. App.2009). As noted, however, we do not reach the prejudice prong of Strickland on this claim of ineffective assistance of counsel because we conclude—based on our holding on direct appeal that the State established a proper foundation for the admission of the dog-tracking evidence—that counsel’s performance was not deficient. Therefore, Ex parte Taylor is inapplicable here.

. In his Rule 32 petition, Van Pelt also claimed that ‘‘[c]ounsel did not request funds for a mitigation specialist, and never sought assistance by anyone trained in capital mitigation practice.” (C. 26.) Van Pelt does not reassert this claim on appeal. Therefore, this claim is deemed abandoned. See Burks v. State, 600 So,2d at 380.